733 A.2d 616

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dennis V. GAFFNEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided June 30, 1999.

Alan J. Josel, Chief Public Defender, Jeanette D. Dickerson, Asst. Public Defender, for Dennis Gaffney.

Mary MacNeil Killinger, Asst. D.A., Adrienne Duvall, Commonwealth.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, and NEWMAN, JJ.

## OPINION

ZAPPALA, Justice.

We granted allowance of appeal in this case limited to the issue of whether application of the registration provisions set forth at Section 9793 of the Registration of Sexual Offenders Act (Act), 42 Pa.C.S. § 9791 et seq., constitutes an ex post facto violation where Appellant pled guilty to the offenses of

involuntary deviate sexual intercourse and aggravated indecent assault and where commission of these offenses occurred prior to the effective date of the registration provisions of the Act.[1] For the reasons that follow, we hold that no ex post facto violation occurred.

On the afternoon of December 31, 1995, Appellant invited a nine-year-old neighborhood girl into his home. Once inside, Appellant removed his pants, exposing his genitals. He pulled down the girl's pants and removed her underwear. Appellant then violated her vagina orally and manually.

On October 19, 1996, Appellant pled guilty to the charges of involuntary deviate sexual intercourse, aggravated indecent assault, and corruption of minors and was sentenced to an aggregate term of 6 to 30 years' imprisonment. At the hearing, Appellant admitted to having engaged in sexual conduct with the victim on numerous other occasions over a 1½ to 2 year period. In addition to his prison term, Appellant was subject to the registration requirements found at Section 9793 of the Act, 42 Pa.C.S. § 9793.[2]

Section 9793(a) provides, in relevant part:

(a) **Registration.**—A person convicted of any of the offenses set forth in subsection (b) shall be required to register a current address with the Pennsylvania State Police upon release from incarceration, upon parole from a State or county correctional institution, upon the commencement of a sentence of intermediate punishment or probation or where the offender is under the supervision of the Pennsylvania Board of Probation and Parole at the time of enactment of this section. . . .

1. The Act was enacted on October 24, 1995. Section 9793, 42 Pa.C.S. § 9793, became effective 180 days thereafter. In *Commonwealth v. Williams*, 557 Pa. 285, 733 A.2d 593 (1999), we struck all of the relevant provisions of the Act pertaining to sexually violent predators as being violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The relevant provisions of the Act at issue in *Williams* are not implicated here.

2. The statutory notes following this provision provide that offenders convicted before the effective date of this section who remain under the jurisdiction of the Pennsylvania Board of Probation and Parole are subject thereto.

42 Pa.C.S. § 9793(a).[3] An offender, if incarcerated, will not be released until such information is furnished. This information is then turned over to the chief law enforcement officer of the police department of the municipality in which the offender resides. 42 Pa.C.S. § 9793(c). Registrants must verify their address annually to the State Police, 42 Pa.C.S. § 9796(b), and any change of address must be immediately reported. 42 Pa.C.S. § 9796(c). Dissemination of this information beyond local law enforcement officials is not specified. The period of registration under this provision is ten years.

Appellant argued, before the trial court and the Superior Court, that application of the registration provisions to him constituted an ex post facto violation pursuant to both the federal and state constitutions[4] since these provisions were not in effect at the time he committed the relevant offenses. He maintained that application of the registration requirements impermissibly "chang[ed] the punishment, and inflict[ed] a greater punishment, than the law annexed to the crime, when committed." See Commonwealth v. Gaffney, 702 A.2d 565, 566 (Pa.Super.1997).

Both the trial court and the Superior Court rejected Appellant's assertion. The Superior Court concluded that because the registration provisions do not constitute punishment, no ex post facto violation occurred. Specifically, the Superior Court relied on the Third Circuit's decisions in Artway v. Attorney General, 81 F.3d 1235 (3d Cir.1996), and E.B v. Verniero, 119 F.3d 1077 (3d Cir.1997), cert. denied, —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998), in reaching its decision.

In Artway and Verniero, the Third Circuit, reviewing whether New Jersey's version of Megan's Law[5] violated the Ex Post Facto Clause, established a three-prong test to

---

**3.** Two of the crimes that Appellant pled guilty to are included in the enumerated offenses set forth at Section 9793(b)(1) (involving minor victims) of the Act, i.e., involuntary deviate sexual intercourse and aggravated indecent assault.

**4.** U.S. CONST. art I, § 10; PA. CONST. art. I, § 17.

**5.** New Jersey enacted the Registration and Community Notification Laws, Pub.L.1994, Chs. 128, 133 (codified at N.J.S.A. 2C:7-1 to 7-11) as part of a ten-bill package referred to as "Megan's Law."

determine whether a particular legislative measure constitutes punishment. This test provides that a particular measure will be considered punishment where: (1) the legislature's actual purpose is punishment, (2) the objective purpose is punishment, or (3) the effect of the statute is so harsh that "as a matter of degree" it constitutes punishment. See *Verniero,* 119 F.3d at 1093.

After applying the foregoing test, the *Artway* court determined that the registration provisions set forth in New Jersey's Megan's Law do not constitute punishment for purposes of the Ex Post Facto Clause; the *Verniero* court, in applying the test, concluded that the public notification provisions of New Jersey's Megan's Law do not constitute punishment.[6] The Superior Court, in reaching its conclusion, held that there was no substantive difference between the registration provisions of our Act and those of New Jersey's, and accordingly held that the registration provisions found in the Act do not violate the Ex Post Facto Clause.[7]

In analyzing Appellant's state constitutional claim, the Superior Court initially recognized that where there is a compelling reason to do so, the Pennsylvania Constitution may be construed as providing greater rights than the United States Constitution. The court, however, concluded that "[i]n light of the relatively unobtrusive nature of the Megan's Law registration provisions, we do not find this case presents any compelling reason to depart from federal standards." *Gaffney,* 702 A.2d at 569. Accordingly, the court likewise held that no state

6. Our Act, likewise, contains notification provisions; however, we wish to make clear that only the registration provisions of the Act are at issue here. Moreover, we specifically declined to address whether the notification provisions of the Act constitute punishment in *Williams,* 557 Pa. at 301 n. 10, 733 A.2d at 602 n. 10, where we struck said provisions for other reasons.

7. The lower court correctly noted that New Jersey's registration provisions and those found in our Act are substantially similar. Specifically, New Jersey's provisions require persons who have been convicted of certain designated offenses to register with the chief law enforcement officer of the municipality in which he chooses to reside. Periodic confirmation of this address is required. Further dissemination of the information is not provided for in New Jersey's act.

ex post facto violation occurred. Appellant now argues that the Superior Court's decision was in error.

The test first articulated by the *Artway* court was derived through an exhaustive consideration of relevant United States Supreme Court precedent.[8] After *Artway* was decided, the United States Supreme Court filed two decisions, *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), and *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), where the Court conducted analysis of what constitutes punishment for purposes of the Ex Post Facto and the Double Jeopardy Clauses. In *Ursery*, the Court concluded that civil forfeitures do not constitute punishment for purposes of the Double Jeopardy Clause. In *Hendricks*, the Court upheld a Kansas statute that provides for the civil commitment of sexually violent predators when faced with an ex post facto challenge, among others.

■ The *Verniero* court considered whether these decisions had any effect on the analysis and test set forth by the *Artway* court. The *Verniero* court determined that, to the contrary, these decisions did not require it to abandon or overhaul *Artway* since the concerns articulated by the Court in *Hendricks* were identical to those established in *Artway*. Our independent review leads us to the same conclusion and we, therefore, adopt the *Artway /Verniero* test.

■ As noted, the first prong of the test requires an analysis of whether the legislature's actual, subjective purpose in enacting a particular measure is punishment. The *Artway* court aptly noted:

If the legislature intended Megan's Law to be "punishment," i.e., retribution was one of its actual purposes, then it

8. The court synthesized the legal principles articulated by the Supreme Court in the following cases: *DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960); *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); and *California Department of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). See *Artway*, 81 F.3d at 1254–1261.

must fail constitutional scrutiny. If on the other hand, 'the restriction of the individual comes about as a relevant incident to a regulation,' the measure will pass this first prong.

*Artway*, 81 F.3d at 1263 (citations omitted). In gleaning the actual purpose of the Act, it is relevant to examine the declaration of purpose found at Section 9391(b), which provides:

It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive.

42 Pa.C.S. § 9791(b).

It is clear from the foregoing passage that the legislature's intent in requiring offenders to register with the State Police regarding their whereabouts was not retribution; rather, the legislature's stated intent was to provide a system of registration and notification so that relevant information would be available to state and local law enforcement officials in order to protect the safety and general welfare of the public. Thus, the legislature's actual purpose in enacting the registration provisions was not punishment; rather its purpose was to effectuate, through remedial legislation, the non-punitive goal of public safety.

Next, we must determine if the objective purpose of the legislature, in requiring offenders to register a current address with the State Police, is punitive. As noted by the

Superior Court, the following guidance can be derived from the *Verniero* court's decision:

> The "objective" prong of this test focuses on "whether analogous measures have traditionally been regarded in our society as punishment," and has three subparts: (A) "proportionality—whether the remedial purpose of [the measure] ... can explain all the adverse effects on those involved," (B) whether the measure has been historically considered punishment, and (C) whether the measure serves both a remedial and a deterrent purpose. If question (C) is answered in the affirmative, then a measure will be considered punitive if: (a) the "deterrent purpose is an unnecessary complement to the measure's salutary operation," (b) "the measure is operating in an unusual manner inconsistent with its historically mixed purposes," or (c) "the deterrent purpose overwhelms the salutary purpose."

*Gaffney,* 702 A.2d at 567.

In applying this analysis, the *Artway* court initially observed that, traditionally, "registration is a common and long standing regulatory technique with a remedial purpose." *Artway,* 81 F.3d at 1264–65 (citing *New York v. Zimmerman,* 278 U.S. 63, 49 S.Ct. 61, 73 L.Ed. 184 (1928) (registration of membership corporations and associations permissible); *United States v. Kahriger,* 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953) (registration of professional gamblers permissible), overruled on other grounds by *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954) (registration of lobbyists permissible)).

As applied to New Jersey's statute, the court further observed:

> The solely remedial purpose of helping law enforcement agencies keep tabs on these offenders fully explains requiring certain sex offenders to register. Registration may allow officers to prevent future crimes by intervening in dangerous situations.... The registrant may face some unpleasantness from having to register and update his

registration. But the remedial purpose of knowing the whereabouts of sex offenders fully explains the registration provision just as the need for dinner fully explains the trip out into the night. And the means chosen—registration and law enforcement notification only—is not excessive in any way. Registration, therefore, is certainly "reasonably related" to a legitimate goal: allowing law enforcement to stay vigilant against possible re-abuse.

81 F.3d at 1265. Further, the court concluded that "registration does not resemble punishment through a historical analysis," and "because registration historically is a regulatory technique with a salutary purpose, any incidental purpose to deter future offenses by past sex offenders will not invalidate it. . . ." *Id.* at 1265–66.

Appellant, apparently in response to the foregoing analysis, inartfully argues that the objective purpose of the registration provision is really punitive because the "requirement serves only to punish for the sake of appeasing the public, and setting the registrant adrift to the whims and passions of the public." Appellant's Brief at 11. This same argument, including citation to Nathaniel Hawthorne's *The Scarlet Letter* (Random House 1950) (1850), was advanced before the *Artway* court and rejected. In an observation that is equally relevant here, the court pointed out that:

[T]he notification issue is not before us. We evaluate only registration, and that provision bears little resemblance to the Scarlet Letter. Registration simply requires Artway to provide a package of information to local law enforcement; registration does not involve public notification. Without this public element, Artway's analogy fails. The Scarlet Letter and other punishments of "shame" and "ignominy" rely on the disgrace of an individual before his community. The act of registering with a discrete government entity, which is not authorized to release that information to the community at large (except in emergencies), cannot be compared to public humiliation. The officers who constitute local law enforcement, even if they are from Artway's area, would constitute only a de minimis portion of that communi-

ty. And their ready access to criminal history information is an integral part of their jobs, rather than an extraordinary event likely to trigger opprobrium.

*Artway*, 81 F.3d at 1265–66.

Similarly here, we are only dealing with the registration requirements of the Act. Under these provisions, the Pennsylvania State Police are required to maintain a state registry of offenders convicted of the enumerated offenses set forth at Section 9793 of the Act. 42 Pa.C.S. § 9799.1(1). This information is given solely to the chief law enforcement officer of the police department having primary jurisdiction of the municipality in which the registrant resides. 42 Pa.C.S. §§ 9793(c), 9799.1(4). No further public dissemination of this information is provided for in the Act. Thus, Appellant's concerns regarding the objective effects of the registration provisions lack merit. As concluded by the *Artway* court, we too find that the objective purpose of the registration provisions is not punitive.

Finally, regarding the effect prong, the *Artway* court observed that a determination must be made regarding whether the effect of the particular provision is "so harsh 'as a matter of degree,' that it constitutes 'punishment.'" *Id.*, 81 F.3d at 1266. Here, the same analysis that leads to our conclusion that the objective purpose of registration is non-punitive, likewise leads us to conclude that the effect of the provision is non-punitive. As discussed, the only information Appellant is required to provide pursuant to the registration provisions is a current address. His address is given only to state and local law enforcement personnel, who already have access to the information through Appellant's criminal record. This information is to be verified annually and is not disseminated to the public. Notwithstanding the minor inconvenience Appellant may experience in verifying his address over a ten year period, it is difficult to fathom how the effects of this requirement could be characterized as "so harsh" as constituting punishment for purposes of the Ex Post Facto Clause, and we do not view them as such.

Based on the foregoing, we conclude that no ex post facto violation occurred pursuant to the United States Constitution. We now turn to an examination of the matter pursuant to Article I, Section 17 of the Pennsylvania Constitution.

 As properly noted by the Superior Court, discharging appellant's federal constitutional claim does not

automatically terminate our inquiry. To the contrary, it is well settled that "here in Pennsylvania...it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, each time a provision of that fundamental document is implicated." *[Commonwealth v.] Edmunds,* [526 Pa. 374, 389], 586 A.2d [887] at 894 [894–95]. Where there is a compelling reason to do so, we are to construe the Pennsylvania Constitution as providing greater rights than the federal constitution. *Interest of B.C.,* 453 Pa.Super. 294, 683 A.2d 919, 927 (1996) (citing *Commonwealth v. Gray,* 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985)).

*Gaffney,* 702 A.2d at 569.

The language of the federal and state ex post facto clauses are virtually identical. Article I, § 10 of the United States Constitution provides that "no state shall...pass any bill of attainder, ex post facto law, or law impairing the obligation of contracts...." Article I, § 17 of the Pennsylvania Constitution specifies that "[n]o ex post facto law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." In *Commonwealth v. Young,* 536 Pa. 57, 65–66, 637 A.2d 1313, 1317 (1993), we noted that the "same pre-revolutionary-war concerns shaped the ex post facto provision of the constitutions of Pennsylvania and the United States." We further noted that virtually identical standards have applied to determining whether an ex post facto violation has occurred pursuant to the Pennsylvania and United States Constitution. *Id.* Accordingly, in *Young,* where we found no violation of the ex post facto clause of the federal constitution, we declined to

depart from our analysis in resolving Young's state constitutional claim.

As aptly noted by the lower court and discussed above, since our decision in *Young*, "substantial developments have occurred in federal ex post facto jurisprudence, which may impact the harmony between the [United States] and Pennsylvania constitutions." *Gaffney*, 702 A.2d at 569, citing *Artway*, 81 F.3d at 1254 (recognizing the confused state of federal law regarding punishment); *United States v. Ursery* (civil forfeitures do not constitute punishment regardless of whether forfeited property may be in excess of harm triggering forfeiture); *Kansas v. Hendricks* (possible indefinite civil commitment does not constitute punishment). Thus a determination of whether we believe greater protections should be afforded Appellant pursuant to the Pennsylvania Constitution is appropriate.

Regarding his state constitutional claim, Appellant reiterates the assertions he made regarding his federal claim, i.e., that the registration provisions constitute additional punishment and that he will be subjected to negative public scrutiny, possibly resulting in "retaliation by the public" and impacting his ability to become gainfully employed. Appellant's Brief at 13. Additionally, Appellant claims that subjecting him to the registration requirement after he has served his full period of incarceration, from which he will not be released until the information required thereunder is furnished, provides further support for his claim that the registration requirements constitute punishment.

As discussed earlier, Appellant's concerns regarding the possible public scrutiny to which he may be subjected, as well as his bald claim of possible employment impairment, are of no moment since he is merely required to register a current address with state and local law enforcement agencies; public dissemination of this information is not provided for in the Act. Moreover, consistent with our prior analysis, we do not view the possible minimal inconvenience of having to annually verify one's address as rising to the level of punishment.

Given these conclusions, we find Appellant's final claim unpersuasive.

Because we do not view the registration requirements as punitive but, rather, remedial, we do not perceive mandating compliance by offenders who have served their maximum term to be improper. Furthermore, the fact that an offender may be held until such information is furnished is no different from confining someone in a civil contempt proceeding. While any imprisonment, of course, has punitive and deterrent effects, it must be viewed as remedial if release is conditioned upon one's willingness to comply with a particular mandate. See *Petition of Specter*, 439 Pa. 404, 268 A.2d 104 (1970), citing *Nye v. United States*, 313 U.S. 33, 42–43, 61 S.Ct. 810, 85 L.Ed. 1172 (1941); see also *Knaus v. Knaus*, 387 Pa. 370, 379, 127 A.2d 669, 673 (1956), citing *In re Nevitt*, 117 F. 448, 461 (8th Cir.Mo.1902) (person held in contempt "carries the keys of his prison in his own pocket. He can end the sentence and discharge himself at any moment by doing what he had previously refused to do").

Appellant has failed to present any compelling reason for our departure from the standards appropriate for determining whether an ex post facto violation pursuant to the federal constitution has occurred and we find no independent reasons for doing so. Accordingly, we affirm the Superior Court's decision finding that no ex post facto violation occurred in requiring Appellant to comply with the registration provisions of the Act.

Justice SAYLOR did not participate in the consideration or decision of this case.