## Commonwealth v. Williams

238

C.P. of Erie County, no. 2416 of 2000.

*James K. Vogel, assistant district attorney,* for plaintiff.

*John B. Carlson,* for defendant.

*Karl Baker,* for amici curiae.

CONNELLY, *J.,* June 20, 2001—Before the court is a constitutional challenge to the latest version of Megan's Law.

## FACTUAL HISTORY

On July 27, 2000, petitioner sexually assaulted a 17-year-old girl in the women's restroom of the Tinseltown movie theater. On March 21, 2001, petitioner pled guilty

to several charges[1] including rape. Because rape is a predicate offense under 42 Pa.C.S. §9795.1 et seq. (Megan's Law II), this court ordered the State Sexual Offenders Assessment Board to evaluate petitioner prior to his sentencing. The results of the evaluation are to assist the court in determining whether petitioner is a "sexually violent predator."

If petitioner is found to be a SVP then he must comply with the requirements of Megan's Law II. Petitioner will be required to register with the state police, provide them with fingerprints, a photograph of himself, his current address, any subsequent change of address and his employment information, all of which the SVP must update quarterly. The state police are then required to transmit this information to the local police where the SVP resides and works. The local police are then required to disseminate the gathered information to neighbors, schools, day-care facilities and the victim. In addition, the SVP must attend monthly counseling sessions in a program approved by the board for the rest of their life and must shoulder the financial burden. Failure of the SVP to comply with any of these requirements, subjects the SVP to a mandatory minimum sentence of probation for life, up to a maximum sentence of life in prison.

On March 26, 2001, petitioner, through counsel, filed a motion for extraordinary relief challenging Megan's

---

1. Section 3121 Rape.

Section 3123 Involuntary deviate sexual intercourse.

Section 2702 Aggravated assault.

Section 2706 Terroristic threats.

Section 907 Possessing instruments of crime.

Law II as unconstitutional under the United States and Pennsylvania Constitutions. A brief in support of his motion was attached thereto. The American Civil Liberties Union together with the Pennsylvania Association of Criminal Defense Lawyers, Defender Association of Philadelphia and the Public Defender Association of Pennsylvania filed an amicus curiae memorandum of law in support of petitioner's challenge.

Petitioner argues the effects of Megan's Law II rise to the level of punishment requiring the full panoply of constitutional protections as required in any other criminal proceeding. After extensive review, this court finds Megan's Law II in fact does inflict additional punishment and therefore is violative of the Fourteenth Amendment of the United States Constitution.[2]

## LEGISLATIVE HISTORY

The original Megan's Law (Megan's Law I) was adopted by the Pennsylvania Legislature in 1995 and signed into law on October 24 of that same year. In 1999, the Pennsylvania Supreme Court, in *Commonwealth v. Williams,* 557 Pa. 285, 733 A.2d 593 (1999), struck down Megan's Law I as violative of the due process clause of the Fourteenth Amendment. In *Williams,* the Supreme Court found unconstitutional section 9794(b), which placed the burden of proof upon the person convicted of

---

2. This court is not unaware that the Constitution of Pennsylvania may in fact grant greater protections to those accused of a crime, however since this court finds Megan's Law II violates the protections afforded in the Constitution of the United States, this court need not address the protections provided by the state Constitution.

a predicate offense, to rebut the presumption that they are a sexually violent offender.

In response, on May 3, 2000, the Pennsylvania General Assembly passed Megan's Law II which was signed into law May 10 of that same year. Megan's Law II does not contain the presumption that was found to be unconstitutional in *Williams*.

## APPLICABLE LAW

(1) A statute will only be found unconstitutional if it "clearly, palpably and plainly violates the constitution." *Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983).

(2) The Fifth Amendment to the United States Constitution provides that "No person shall . . . be deprived of life, liberty, or property without due process of law . . . ." U.S. Constitution Amendment V.

(3) The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution directs that "No state shall . . . deprive any person of life, liberty, or property without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." U.S. Constitution Amendment XIV, Section 1.

## DISCUSSION

Petitioner's constitutional challenges are based on the assumption that the registration requirements in Megan's Law II are punitive in nature and therefore entitle petitioner to the full panoply of constitutional protections available to defendants in criminal proceedings.[3]

---

3. Those requirements include, the right to a jury trial, the right against self-incrimination, proof of guilt beyond a reasonable doubt

Megan's Law II has yet to be reviewed in the appellate courts at the time of the court's writing of this opinion and therefore is a matter of first impression in the case at bar.[4]

The *Williams* court found Megan's Law I to be punitive in nature and as a result held that shifting the burden of proof to the offender to prove s/he is not a SVP violated the constitutional protections of due process. The *Williams* court stated:

"Given our view, however, that the proceeding set forth in the Act to determine whether or not one is a sexually violent predator is a separate factual determination, the end result of which is the imposition of criminal punishment, we hold that anything less than the full panoply of the relevant protections which due process guarantees is violative of the Fourteenth Amendment." *Williams* at 304, 733 A.2d at 603.

The same day *Williams* was decided, the Supreme Court of Pennsylvania also decided *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999). The issue before the *Gaffney* court was whether the registration requirements of Megan's Law I violated Gaffney's constitutional right against ex post facto laws. Gaffney argued the registration requirements of Megan's Law I imposed additional punishment on him and as such violated his constitutional rights.

---

and the right to have criminal proceedings initiated by indictment or information.

4. Megan's Law II has been held to be unconstitutional by several judges in at least two counties in Pennsylvania however.

In order to determine whether the requirements of Megan's Law I were ex post facto, it was necessary for the *Gaffney* court to determine if the requirements of Megan's Law I constituted additional punishment. The *Gaffney* court found the requirements of Megan's Law I did not inflict additional punishment on a defendant and accordingly found no violation of Gaffney's constitutional rights.

At first blush, there appears to be a dichotomy in the holdings between *Williams* and *Gaffney* on the issue of what constitutes punishment. However, when both cases are examined in light of the heightened burdens and consequences of Megan's Law II, which are significantly greater than those of Megan's Law I, there is a consistency of law which is appropriate to application herein. Even more significant, the increased burden, effect and consequences of Megan's Law II strengthen the holding in *Williams*.

To determine whether a statute is punitive in nature both the *Williams* and *Gaffney* courts adopted the test from the Third Circuit's decisions in *Artway v. Attorney General,* 81 F.3d 1235 (3d Cir. 1996)[5] and *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir. 1997).[6] *Gaffney,* 733

---

5. In *Artway,* the Third Circuit found that New Jersey's Megan's Law notification provisions were unripe for adjudication but found the registration provisions constitutional because at the registration phase only tier 1 notification was required, therefore the only notification was to public agencies and not to the outside public.

6. In *Verniero,* the Third Circuit again found New Jersey's Megan's Law notification provisions constitutional on tier levels 2 and 3 because the Act restricts the dissemination of information on tier 2 and 3 offenders to those who are "reasonably certain" to encounter a tier 2 or 3 offender.

A.2d at 619. The test has three prongs, the first subjective, the second objective (both of which focus on the legislature's purpose and intent of enacting legislation) and the third, requiring an evaluation of the effects of the statute. If a statute fails any one prong it is punitive in nature and the defendant prosecuted under that law must be afforded the full panoply of the constitutional protection. This court will now examine Megan's Law II under the *Artway/Verniero* test.

The General Assembly significantly increased the SVP requirements under Megan's Law II. Further, it broadened the dissemination of information by requiring the information to be circulated by electronic means. Second, it increased the punishment for failure to comply with the requirements of the Act to a possible sentence of life in prison. Third, it removed the ability to have the SVP status reviewed by the board and the court and removed if the SVP has been rehabilitated.

Initially, the *Artway/Verniero* test requires an analysis of whether the legislature's actual, subjective purpose or intent in enacting a particular measure is punishment. A review of the statute's legislative history reveals that Megan's Law I and II were both passed by the Pennsylvania General Assembly for the purpose of creating a system to identify and track SVPs by requiring such offenders to register with the state police as they transition from incarceration into society and any subsequent relocations. The information gathered from the registration is then disseminated to various agencies that have a heightened interest in protecting citizens from SVPs. The information is designed to put those who might be at risk of becoming a victim of such predators

on notice so they can take the necessary steps to guard against such risks.

Initially, Megan's Law II appears to be specifically crafted to protect the community and not to punish those who are subject to registration under the Act. The legislature made it clear under 42 Pa.C.S. §9791(b) "Declaration of policy:"

"It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive."

The declaration of policy in Megan's Law II, is identical to that of Megan's Law I which the *Gaffney* court found was not intended as punitive. Accordingly, the subjective purpose or intent of Megan's Law II is designed to be remedial in nature and not punitive. See *Gaffney*, 733 A.2d at 619.

The second prong of the test requires a court to determine if analogous measures have traditionally been regarded by society as punitive. It has three subparts: (A) proportionality, whether the remedial measure or purpose can explain all of the adverse effects on those involved, (B) whether the measure has been historically

considered punishment, and (C) whether the measure serves both a remedial and deterrent purpose. See *Gaffney,* 733 A.2d at 619.

If subpart (C) is answered in the affirmative then a measure will only be considered punitive if: (a) the deterrent purpose is an unnecessary compliment to the measure's salutary operation, (b) the measure is operating in an unusual manner inconsistent with its historically mixed purpose, and (c) the deterrent purpose overwhelms the salutary purpose. See *Gaffney,* 733 A.2d at 619-20. The *Gaffney* court found Megan's Law I satisfied the second prong of the *Artway/Verniero* test. However, Megan's Law II is significantly more enhanced.

Petitioner here argues[7] the objective effects of the enhanced requirements of Megan's Law II are so burdensome that they constitute punishment. Petitioner further argues that because the new Act requires the wide dissemination of his status as a SVP, a social stigma or indelible mark is attached to him equivalent to that of a scarlet letter. Moreover, he asserts that the threat of incarceration for the rest of his life and an inability to ever have the future opportunity to remove the burdens of the statute rise to the level of punishment. These requirements are equivalent to a lifetime of probation which is clearly a well-established form of punishment in this country.[8]

---

7. Although petitioner raises a host of other challenges, because this court finds Megan's Law II violative of the United States Constitution on the above issues, this court's inquiry need not go any further.

8. Neither probation nor parole is a sentence. Sentencing is an original imposition of punishment for a crime while parole is a conditional release from prison before the end of a sentence. *Geraghty v. U.S.*

The *Gaffney* court (albeit only ruling on the issue of registration) was guided by *Artway* and in dicta addressed the issue of notification:

"The notification issue is not before us. We evaluate only registration, and that provision bears little resemblance to the scarlet letter. Registration simply requires Artway to provide a package of information to local law enforcement; registration does not involve public notification. Without this public element, Artway's analogy fails. The scarlet letter and other punishments of 'shame' and 'ignominy' rely on the disgrace of an individual before his community. The act of registering with a discrete government entity, which is not authorized to release that information to the community at large (except in emergencies), cannot be compared to public humiliation. The officers who constitute local law enforcement, even if they are from Artway's area, would constitute only a de minimis portion of that community." *Gaffney,* 733 A.2d at 620.

## NOTIFICATION

This is one of the areas where Megan's Law II falls short of constitutional muster. The information gathered does not stop at the doors of law enforcement. In fact, local law enforcement agencies are under an affirmative

---

*Parole Com.,* 429 F. Supp. 737 (1977). Probation is a supervisory period ordered in lieu of incarceration. *Commonwealth v. Ferguson,* 201 Pa. Super. 649, 193 A.2d 657 (1963). However, for all intents and purposes, probation is considered a sentence in Pennsylvania. For example, probation is a sentence for purposes of appeal, due process, or double jeopardy. *Commonwealth v. Vivian,* 426 Pa. 192, 231 A.2d 301 (1967).

duty to disseminate the information to the public at large. 42 Pa.C.S. §9798(b)(1)(2)(3)(3.1)(4)(5).[9] Now authorized to use electronic means, such as the Internet to proliferate information about a SVP, this information is available for viewing by those who live in other states and around the world, clearly outside the zone of any risk, 42 Pa.C.S. §9798(d).[10]

Such a nonselective, blanket notification scheme exceeds the nonpunitive aspects of the Act's own "declaration of policy" statement that "it be the policy of this Commonwealth to require the exchange of *relevant* information about sexually violent predators among public agencies and officials and to authorize the release of *necessary and relevant information* about sexually violent predators. . . ." Declaration of policy, 42 Pa.C.S. §9791(b).

This court must strain to envision a legitimate state interest and need for the wide, uncontrollable dissemination of the stigmatizing fact petitioner is a SVP, that the Act now requires. For instance, there is no need for someone in California to know the personal information of a SVP living in the state of Pennsylvania. The likeli-

---

9. Under the statute the written notice shall contain the name of the SVP, his address, the offense he was convicted for, a statement he has been determined to be a SVP, and a photograph and shall be given to neighbors, the director of the county children and youth agency, the superintendent of each school district and private and parochial school officials, and the operators of all certified and licensed daycare and preschool programs within the municipality, as well as the president of any college within 1,000 feet of the defendant's residence.

10. This section of the statute provides that all of the information provided in subsection (a) about the SVP be available to the general public and may be provided by electronic means.

hood of someone from another state having any contact with a SVP from Pennsylvania, is remote at best. Yet notification by electronic means is sweeping, overly broad and adversely affects those involved.

Because the notification scheme in Megan's Law II is so broad, it will reduce the petitioner to be viewed as a pariah by others who may not be remotely at risk. Citizens who feel the SVP should not be entitled to live in their neighborhoods or work in their job field may be likely to retaliate against the SVP. Incidents in other jurisdictions with Acts containing less notifications confirm this fact.[11] Therefore, the more widespread this information becomes, the more likely the SVP and the innocent public at large will be exposed to violence and other inappropriate recriminations.

## REGISTRATION AND COUNSELING

Labels aside, the Act inflicts even greater punishment of a more traditional style. If determined to be a SVP, petitioner is faced with the unsettling fact that if he fails to comply with the enumerated requirements of Megan's Law II at any time during his lifetime, he is exposed to a possibility of spending the rest of his life in prison. Once classified as a SVP, the door is permanently open for petitioner to lose forever his right to liberty even though he may not commit any further substantive offenses.

Moreover, the requirement that the SVP report quarterly to the state police is tantamount to probation where

---

11. See amicus curiae appendix for anecdotal evidence of such including threats made not only to defendants but family members, lawyers and judges, loss of employment, harassment and physical assault.

one must report to his probation officer on a regular basis; the provision of mandatory, monthly counseling is also a condition often associated with probation/parole supervision. This procedure has traditionally been used as punishment in our criminal justice system. Even more troubling to this court is the fact that the SVP will be subject to these burdens after serving their time in prison and on supervision (parole). In short, having completely paid their lawful debt to society, they are unable to ever lift the heavy burden placed on them by the Act. Specifically, the statute requires that the Pennsylvania State Police verify the defendant's residence (and compliance with counseling) of a SVP every 90 days by sending a verification form to his residence. The SVP must then personally appear within 10 days and complete the form and be photographed. Section 9796(a). Verification of residence. This requirement, is in effect for the lifetime of the SVP. Should the SVP fail to verify his or her residence or be photographed (as to any 90-day period) she or he "commits a felony of the first degree and shall be sentenced to a mandatory minimum sentence of probation for the remainder of the individual's lifetime and may be sentenced to a period of incarceration up to the individual's lifetime." Section 9796(e). Penalty.

Further, and also for the SVP's lifetime, she or he is "required to attend monthly counseling sessions in a program approved by the board and be financially responsible for all fees assessed by the counseling sessions." Section 9799.4. Counseling of sexually violent predators.

Regular reporting and mandatory counseling have long been conditions of supervision traditionally attached to

sentences of probation (or requirements of parole). See *Commonwealth v. Johnson,* 282 Pa. Super. 21, 422 A.2d 655 (1980) (leaving drug counseling program prematurely sufficient grounds for revocation of probation); *Commonwealth v. McBride,* 289 Pa. Super. 396, 433 A.2d 509 (1981); *Commonwealth v. Newman,* 225 Pa. Super. 327, 310 A.2d 380 (1973) (revocation for failure to report to probation or parole officer).

The Act also inflicts punishment because it contains two separate sentencing schemes depending on the level of culpability or aggravating circumstances of an offender. The offender may be subject to a 10-year or lifetime registration depending on the underlying predicate offense.[12] 42 Pa.C.S. §9795.1(a)(b). These variations are

---

12. *Section 9795.1. Registration*

*(a) 10-year registration.*—The following individuals shall be required to register with the Pennsylvania State Police for a period of 10 years:

(1) Individuals convicted of any of the following offenses:

18 Pa.C.S. §2901 (relating to kidnapping) where the victim is a minor.

18 Pa.C.S. §3126 (relating to indecent assault) where the offense is a misdemeanor of the first degree.

18 Pa.C.S. §4302 (relating to incest) where the victim is 12 years of age or older but under the age of 18 years of age.

18 Pa.C.S. §5902(b) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor.

18 Pa.C.S. §5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances where the victim is a minor).

18 Pa.C.S. §6312 (relating to sexual abuse of children).

18 Pa.C.S. §6318 (relating to unlawful contact or communication with minor).

18 Pa.C.S. §6320 (relating to sexual exploitation of children).

traditionally used when measuring the extent of wrongdoing rather than facilitating a remedial purpose. Such a large disparity as to time of tracking an offender does not serve as an aid or indicate the likelihood of recidivism among different offenders. These diverse limits simply appear to act as differing forms of retribution. If the underlying predicate offense is of one category the offender is required to register for only 10 years. However, if the underlying offense is perceived to be of a more egregious legal delineation, the offender is subject to the enhancement of having to register for life rather than simply 10 years. And, no matter in which category the predicate offense falls, if the offender is determined to be a SVP then he is subject to registration and the mandatory conditions attached thereto for the rest of his life. These provisions clearly inflict punishment of different length and magnitude based on a somewhat arbitrary and discretionary classification, somewhat akin to

---

(2) Individuals convicted of an attempt to commit any of the offenses under paragraph (1) or subsection (b)(2).

*(b) Lifetime registration.*—The following individuals shall be subject to lifetime registration:

(1) An individual with two or more convictions of any of the offenses set forth in subsection (a).

(2) Individuals convicted of any of the following offenses:

18 Pa.C.S. §3121 (relating to rape).

18 Pa.C.S. §3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. §3124.1 (relating to sexual assault).

18 Pa.C.S. §3125 (relating to aggravated indecent assault).

18 Pa.C.S. §4302 (relating to incest) when the victim is under 12 years of age.

the sentencing schemes for various classes of crimes (felonies and misdemeanors).

The third prong of the test requires the court to measure the effect of the statute on one of the citizenry. The analysis and the effects of the third prong are similar to those of the objective portion of the test, which failed constitutional scrutiny (*i.e.* if the effects of the Act are so harsh as a matter of degree that it constitutes punishment). Here, the same analysis that leads this court to conclude that objective purpose of the test is punitive, likewise leads this court to conclude that the effect of the Act is also punitive. The SVP must provide extensive information to law enforcement officials on a quarterly basis, notify authorities of any subsequent moves and must attend monthly counseling sessions at their own expense. Moreover, this information is not just available to those who need to know, it is spread wide and far by electronic means (*i.e.* the Internet). Retaliations against SVPs have regularly surfaced, often leaving the SVP unable to return to a normal lifestyle once their debt to society has been paid. As a result, many SVPs must live in constant fear for their, and their families, physical and financial well-being.

## CONCLUSION

The foregoing analysis indicates to this court that the notification, registration, and counseling scheme found in Megan's Law II does rise to the level of punishment. Accordingly, the full panoply of constitutional protections must be available to petitioner to minimize the possibility of an unjustified, unfair or unreliable prosecution that inflicts additional punishment. Thus, the Act is

unconstitutional because it does not provide these procedural safeguards.

Although the Commonwealth has a compelling interest in protecting citizens through registration and notification procedures, the state has no interest in notifying the public of those persons who have been erroneously identified as a SVP. Thus the state has a compelling interest in insuring its citizens that the system of determining whether a person is a SVP is both fair and accurate. See *Williams* at 311, 733 A.2d at 606. Because the lynchpin to whether petitioner is exposed to the requirements of Megan's Law II is the initial (and final) determination of SVP status, this is the point at which due process rights must attach, not later, when or if a violation of the Act occurs.

The court therefore reasonably and legally deducts that the provisions of Megan's Law II as to sections 9796(a) (quarterly verification of residence), 9798(b) (to whom written notice provided) and (d) (public notice), as well as 9799.4 (mandatory monthly counseling) constitute the imposition of additional punishment above and beyond the statutory maximum allowable by law for the predicate offenses for which a SVP has been convicted. Before a defendant may be declared a sexually violent predator and such additional punishment may be imposed upon a defendant he must be given the full complement of due process rights. (See footnote 3.) Since the Megan's Law statute does not incorporate such safeguards, and sections 9795.4(a), (b) and (e) give the defendant less than the rights he is entitled to (assessment and hearing as opposed to criminal information and trial; and as to burden of proof, clear and convincing evidence versus proof

beyond a reasonable doubt), those sections too must be declared unconstitutional as violative of the defendant's due process rights.[13]

## ORDER

And now, to-wit, June 20, 2001, the court is constrained to conclude that portions of Megan's Law II are unconstitutional for the reasons set forth in the foregoing opinion, and the defendant's motion for extraordinary relief is granted consistent therewith.

---

13. This court is ever mindful and acutely aware of the heinous acts of child molesters, their impact upon the community and the damage they impose upon their victims. Indeed, in its 15 1/2 years on the bench, this court has presided over more than its share of such cases and has handed down some of the stiffest penalties in the history of the Commonwealth (including a 100 to 200-year sentence) for such gross and deviate behavior. But that has only been done after a defendant has had a full and fair trial, been proven guilty beyond a reasonable doubt and had all of his due process rights safeguarded. As well intentioned as this legislation may have been, it, as all statutes and laws, must not and cannot usurp the constitutional rights of any citizen no matter how heinous the crime or infamous the criminal.