**Robert Michael McGARRY, Petitioner,**

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, et. al., Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 21, 2003.

Decided March 18, 2003.

---

**1212**

Robert Michael McGarry, petitioner, pro se.

Tara L. Patterson, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, COHN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is the *pro se* petition for a writ of mandamus filed by Robert Michael McGarry (McGarry) requesting this Court to order the Pennsylvania Board of Probation and Parole (Board) to re-evaluate him for parole without regard to the Sexual Offender Assessment provision contained in Megan's Law, as amended.[1]

In 1995, McGarry was sentenced to a term of seven years and six months to 15

---

1. On October 24, 1995, the General Assembly, in an effort to protect the safety and general welfare of the people of the Commonwealth,

years imprisonment on convictions of Criminal Attempt to Rape and Burglary with a minimum release date of October 4, 2002. On July 23, 2002, two months and 11 days before the expiration of his minimum sentence, the Board, on its own motion, interviewed McGarry for parole.

By letter dated July 29, 2002, the Board notified McGarry that following the interview and review of his file, it had determined that the "fair administration of justice cannot be achieved through your release," and, therefore, parole was denied.[2] The notification further stated that McGarry would be reviewed again for pa-

role during or after August 2003 and, at that time, the Board would review his file and consider: (1) whether he had successfully completed a treatment program for sex offenders phase II and established himself in phase III; (2) whether he had received a favorable recommendation for parole from the Department of Corrections; and (3) whether he had received/maintained a clear conduct record and completed the Department of Corrections' prescriptive program(s).[3]

On October 16, 2002, McGarry filed a petition for writ of mandamus in our original jurisdiction.[4] He alleged, *inter alia,*

---

enacted a law providing for the registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. That act is commonly referred to as Megan's Law, 42 Pa.C.S. §§ 9791–9799.6.

**2.** On August 26, 2002, McGarry filed a request for administrative relief with the Board alleging (1) that the Board's determination of "fair administration of justice" was a new guideline for paroling inmates and did not apply to his case because that guideline was not in place at the time he committed his crime; (2) that the Board's decision requiring him to complete phase II and establish himself in phase III of the State Correctional Institution at Rockview Sex Offenders Program was improper because it was based on the review of an unqualified counselor; (3) he was not provided adequate administrative procedures because he was being treated unfairly within the Sex Offenders Program and would never be granted parole on that basis; and (4) that the Board erred in further requiring him to receive and maintain a clear conduct record and complete the Department of Correction's prescriptive programs because he had already accomplished all of those things. By letter dated September 5, 2002, the Board denied his request stating that it was not required to consider an application by a prisoner where the Board had issued a parole decision within one year of the date of the current Board decision.

**3.** On November 7, 2002, the Board modified its July 29, 2002 Notice of Board Decision to

clarify the reasons why he had been denied parole, providing, in relevant part:

> FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE ACT OF 1941, AS AMENDED, 61 P.S. § 331.1 ET SEQ., THE BOARD OF PROBATION AND PAROLE, IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOUR BEST INTERESTS DO NOT JUSTIFY OR REQUIRE YOU BEING PAROLED/REPAROLED; AND, THE INTERESTS OF THE COMMONWEALTH WILL BE INJURED IF YOU WERE PAROLED/REPAROLED. THEREFORE, YOU ARE REFUSED PAROLE/REPAROLE AT THIS TIME. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:
> YOUR VERSION OF THE NATURE AND CIRCUMSTANCES OF THE OFFENSE(S) COMMITTED.
> THE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.
> YOUR UNACCEPTABLE COMPLIANCE WITH PRESCRIBED INSTITUTIONAL PROGRAMS.
> YOUR NEED TO PARTICIPATE IN AND COMPLETE ADDITIONAL INSTITUTIONAL PROGRAMS.

**4.** By order dated October 28, 2002, this Court ordered that McGarry's petition for writ of mandamus be treated as a petition for review addressed to this Court's original jurisdiction pursuant to 42 Pa.C.S. § 761 and Pa. R.A.P. 1502.

that the Board violated the *ex post facto* clause of the United States Constitution[5] by applying the assessment of sexual offenders by a psychologist provision of Megan's Law, 42 Pa.C.S. § 9795.4,[6] retroactively. On December 4, 2002, the Board filed an application for summary relief.[7] By order dated December 9, 2002, this Court granted the Board's application for summary relief as to each count with the exception of the count pertaining to the sex offender statute, which is before us now.

■■■ An *ex post facto* law is one which is adopted after the complaining party committed the criminal acts and inflicts a greater punishment than the law annexed to the crime, when committed. *California Dept. of Corrections v. Morales*, 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). One function of the *ex post facto* clause is to bar enactments which, by retroactive operation, increases the punishment for a crime after its commission. *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000). Where the *ex post facto* prohibition may apply in probation cases, the controlling inquiry is whether the retroactive application of the change in law creates "a sufficient risk of increasing the measure of punishment at-

tached to the covered crimes." *Id.* at 250, 120 S.Ct. 1362 (quoting *Morales*, 514 U.S. at 509, 115 S.Ct. 1597).

■■■ In determining whether a legislative enactment violates the *ex post facto* clause, a court must look first to the language of the rule in order to determine whether the rule "facially" violates the proscription against *ex postfacto* laws; however, "[w]hen the rule does not by its own terms show a significant risk [of increased severity of punishment], the [petitioner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Garner*, 529 U.S. at 254, 120 S.Ct. 1362; *see also Reynolds v. Pennsylvania Board of Probation and Parole*, 809 A.2d 426 (Pa.Cmwlth.2002).

■■■ McGarry contends that the Board's action in utilizing the report of a non-licensed therapist to determine his eligibility for parole pursuant to the sexual offender assessment provision of Megan's Law and requiring that he complete a treatment program for sex offenders in order to be considered for parole were

---

5. Article I, Section 10 of the United States Constitution provides:

No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, *ex post facto Law*, or Law impairing the Obligation of Contracts, or grant any Title of Nobility. U.S. Const. art. I, § 10, cl. 1. (emphasis added).

6. 42 Pa.C.S. § 9795.4 was enacted on May 10, 2000, and amended December 20, 2000. That section provides:

Parole assessment.—The Pennsylvania Board of Probation and Parole may request of the board an assessment of an offender or sexually violent predator be conducted and provide a report to the Pennsylvania Board of Probation and Parole prior to considering an offender or sexually violent predator for parole.

7. An application for summary relief is properly evaluated according to the standards for summary judgment. *See Gartner v. Commonwealth of Pennsylvania, Board of Probation and Parole*, 79 Pa.Cmwlth. 141, 469 A.2d 697 (1983); Pa. R.A.P. 1532(b). In deciding a motion for summary judgment, an application for summary relief may be granted if a party's right to judgment is clear, *see* Pa. R.A.P. 1532(b), and no issues of material fact are in dispute. *Sanders v. Commonwealth of Pennsylvania, Board of Probation and Parole*, 651 A.2d 663 (Pa.Cmwlth.1994).

requirements that did not exist at the time he committed his crime and resulted in an extended period of incarceration was a violation of the *ex post facto* clause found in Article I, Section 10 of the United States Constitution.

As to whether Section 9795.4(g) of Megan's Law facially violates the proscription against *ex post facto* laws, we conclude that it does not.[8] Section 9795.4(g) provides that the Board may request an assessment of an offender or sexually violent predator before considering that individual for parole. That Section does not affect an offender's eligibility or opportunity to be paroled it does not impose any additional requirements or restrictions upon an offender before he can be considered for parole. Instead, it merely allows the Board to collect information such as facts regarding the current offense, prior offense history, characteristics of the individual and factors that are supported in an assessment which are filed as criteria reasonably related to the risk of reoffense, *see* Section 9795.4(b), which are necessary for its consideration of an offender for parole

purposes. Because the application of Section 9795.4(g) does not alter any standards for his eligibility for parole, it does not create a significant risk of increasing the severity of McGarry's punishment such that it violates the *ex post facto* clause of the United States Constitution.

In any event, even if Section 9795.4(g) of Megan's Law could otherwise be considered an *ex post facto* law, in this case, the clause is not implicated because, even before its enactment, the Board had the authority to request an assessment of an offender prior to considering him for parole pursuant to Section 19 of the Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. § 331.19, commonly referred to as the Parole Act,[9] which was enacted long before McGarry committed his crime.

Section 19 sets forth various factors to be considered by the Board in determining whether to deny or grant parole to a prisoner. Among numerous other items, such as the nature and circumstances of the offense committed and the general character and background of the prisoner, Section 19 provides "[t]he board shall further

---

**8.** Whether the registration provisions of Megan's Law violated the *ex post facto* clause was addressed by our Supreme Court in *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999), wherein the Court held that the registration provisions do not constitute "punishment," and, therefore, do not violate the prohibition of *ex post facto* laws.

**9.** That Section provides:

It shall be the duty of the board, upon the commitment to prison of any person whom said board is herein given the power to parole, to consider the nature and circumstances of the offense committed, any recommendations made by the trial judge and prosecuting attorney, the general character and background of the prisoner, participation by a prisoner who is serving a sentence for a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) in a

victim impact education program offered by the Department of Corrections and the written or personal statement of the testimony of the victim or the victim's family submitted pursuant to section 22.1 of this act. The board shall further consider the notes of testimony of the sentencing hearing, if any, together with such additional information regarding the nature and circumstances of the offense committed for which sentence was imposed as may be available. The board shall further cause the conduct of the person while in prison and his physical, mental and behavior condition and history, his history of family violence and his complete criminal record, as far as the same may be known, to be reported and investigated. All public officials having possession of such records or information are hereby required and directed to furnish the same to the board upon its request and without charge therefor so far as may be practicable while the case is recent.

cause the conduct of the person while in prison and his physical, mental and behavior condition and history, his history of family violence and his complete criminal record, as far as the same may be known, *to be reported and investigated.*" (Emphasis added.) [10] Because the Board was authorized to request an investigation into a prisoner's mental and behavioral condition as well as his present and past criminal history in considering a prisoner for parole, pursuant to Section 19 of the Parole Act, without regard to the assessment provision of Megan's Law, we cannot say that the Board abused its discretion in requesting such an investigation.

Accordingly, the Board's motion for summary relief is granted and McGarry's petition for review in the nature of a writ of mandamus is dismissed.[11]

### ORDER

AND NOW, this *18th* day of *March,* 2003, the motion for summary relief filed by the Pennsylvania Board of Probation and Parole is granted and the petition for review in the nature of a petition for a writ of mandamus filed by Robert Michael McGarry is dismissed.

---

**10.** We note that Section 19 of the Parole Act was amended in 1998, subsequent to McGarry's conviction; however, that amendment addressed only the Board's consideration of participation in the Department of Corrections' victim impact education programs.

**11.** In his brief, McGarry also contends that the 1996 amendment to Section 1 of the Parole Act, 61 P.S. § 331.1, violated the *ex post facto* clause because it changed the statement of policy from focusing on the rehabilitation of individuals to protecting the safety of the public, making it more difficult to obtain pa-

role. He also argues that the change in the Board's policy requiring three votes to grant parole rather than the two favorable votes previously needed was in violation of the *ex post facto* clause. Finally, he contends that the Board erred in retroactively applying new parole guidelines to obtain federal funding for application of the Federal Violent Offender and Truth in Sentencing Program, and that such application also violates the *ex post facto* clause. However, because those arguments were addressed and disposed of in this Court's order dated December 9, 2002, we need not revisit those issues at this time.