# Commonwealth v. Breyer

C.P. of Montgomery County, nos. 366-00 and 8680-00.

*Bruce L. Castor, district attorney,* for Commonwealth.
*Joseph J. Hylan,* for defendant.

*EN BANC,* NICHOLAS, CORSO AND DEL RICCI, *JJ.*

DEL RICCI, *J.,* October 22, 2001—The defendant Barry Lee Breyer has challenged the constitutionality of 42 Pa.C.S. §9791 et seq., commonly known as Megan's Law II. This is an issue of first impression in Montgomery County.

FACTS AND PROCEDURAL HISTORY

The defendant was charged with involuntary deviate sexual intercourse and related offenses in two separate

criminal complaints. The matters were consolidated and the defendant was convicted by a jury of five counts of involuntary deviate sexual intercourse and three counts of corruption of minors.

Immediately following the defendant's conviction, the court ordered that an assessment be made by the state Sexual Offenders Assessment Board, to determine whether the defendant should be classified as a sexually violent predator, and thereby subject to the notification requirements of 42 Pa.C.S. §9798[1] and the counseling requirements of 42 Pa.C.S. §9799.4.[2] The board identified the defendant as a sexually violent predator. A hearing was scheduled, pursuant to 42 Pa.C.S. §9795.4(e)(1),[3] seeking a judicial determination of the issue of whether the defendant was a sexually violent predator.

The defendant then challenged the constitutionality of Megan's Law II by filing his petition to preclude imposition of sanctions provided by 42 Pa.C.S. §9791 et seq. By agreement of the parties, the matter was bifurcated. The court first held a hearing to determine whether the Commonwealth could meet its burden to prove, by clear and convincing evidence, that the defendant was a sexually violent predator. It was agreed that argument on the issue of the constitutionality of Megan's Law II would be heard following that hearing.[4]

---

1. 42 Pa.C.S. §9798 (West Supp. 2001).

2. 42 Pa.C.S. §9799.4 (West Supp. 2001).

3. 42 Pa.C.S. §9795.4(e)(1) (West Supp. 2001).

4. The constitutional challenge would be moot if the court determined that the Commonwealth had failed to prove that the defendant was a sexually violent predator.

A hearing was conducted on July 24, 2001. The court determined that the Commonwealth met its burden and had proven, by clear and convincing evidence, that the defendant was a sexually violent predator.

. The court then convened, en banc, to consider the constitutional challenge. After reviewing the memoranda filed on behalf of the parties, and hearing argument thereon, the court finds certain portions of Megan's Law II to be unconstitutional, as discussed below.

## THE NATURE OF THE CONSTITUTIONAL CHALLENGE

The defendant presents a single question in his brief, that being whether the sanctions of Megan's Law II may be imposed in light of the United States Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).[5] The defendant claims that such sanctions constitute punishment and cannot be applied in the manner prescribed by the legislature without violating the defendant's right to procedural due process. More specifically, the defendant asserts that the issue of whether the defendant is a sexual predator must be proved to a jury beyond a reasonable doubt. It cannot be determined by a judge in a post-conviction proceeding, based upon a standard of clear and convincing evidence.

---

5. *Commonwealth v. Lowery*, 2001 WL 1168580 (Pa. Super. October 4, 2001), is the first reported Pennsylvania case to discuss *Apprendi*. In *Lowery*, the court adopted the analysis of punishment from *Apprendi* but found that the *Apprendi* protections were not triggered under the circumstances in this case.

The defendant has not challenged the registration provisions of Megan's Law II.[6] While this court is not called upon to rule upon the constitutionality of the registration requirements, we note that this issue has been raised and addressed by several courts of common pleas within the Commonwealth of Pennsylvania.[7] We shall focus on the question of whether the notification provisions of Megan's Law II, section 9798,[8] and lifetime monthly counseling at the defendant's expense, section 9799.4,[9] constitute punishment, thus triggering the application of *Apprendi.*

---

6. The defendant was convicted of offenses which require automatic registration. See 42 Pa.C.S. §9795.1 (West Supp. 2001).

7. See *Commonwealth v. Krouse,* trial court opinion, dkt. no. 394 CRIM 2000 (Indiana County, 12/7/00) (registration, notification and counseling found constitutional); *Commonwealth v. Wagner,* trial court opinion, dkt. no. 2000-734 (Centre County, 4/5/01) (sexually violent predator provisions found to violate due process); *Commonwealth v. Stokes,* trial court opinion, dkt. no. 729-2000 (Philadelphia County, 4/10/01) (Megan's Law II found unconstitutional); *Commonwealth v. Cain,* trial court opinion, dkt. no. 2000-530, 531, 998 (Centre County, 4/17/01) (sexually violent predator provisions found to violate due process); *Commonwealth v. Williams,* trial court opinion, dkt. no. 2416 of 2000 (June 20, 2001) (notification, registration and counseling constitute punishment and therefore the full panoply of rights must be available to defendant); *Commonwealth v. Bannigan,* trial court opinion, dkt. no. 5733/2000 (Bucks County, 8/18/01) (the sexually violent predator provisions of Megan's Law II found to violate due process; registration found to be constitutional).

8. 42 Pa.C.S. §9798 (West Supp. 2001).

9. 42 Pa.C.S. §9799.4 (West Supp. 2001).

## DISCUSSION

### I. *Application of* Apprendi

The defendant in *Apprendi* pleaded guilty to various charges, including two counts of second-degree possession of a firearm for an unlawful purpose. *Apprendi,* 530 U.S. at 470. The state reserved the right to request the court to impose an enhanced sentence, pursuant to New Jersey's hate crime statute. *Id.* Following an evidentiary hearing, the trial court found, by a preponderance of the evidence, that the defendant's actions fell within the scope of the statute and that the hate crime enhancement applied. *Id.* Such a finding resulted in the defendant having to face a maximum sentence of 20 years, rather than the maximum sentence of 10 years he faced as originally charged.[10]

The defendant appealed, claiming that the due process clause of the United States Constitution[11] required that the finding of bias, upon which the defendant's hate-crime sentence was based, must be proved to a jury beyond a reasonable doubt. *Apprendi,* 530 U.S. at 471. The United States Supreme Court agreed, finding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490. In

---

10. The defendant was ultimately sentenced to 12 years on the enhanced charge. *Apprendi,* 530 U.S. at 471.

11. U.S. Const. Amend. V. The Fourteenth Amendment requires the states to comply with due process. U.S. Const. Amend. XIV, §1.

reaching this finding, the court relied, in large part, on its decision in *Jones v. United States,* 526 U.S. 227 (1999), and, to a lesser extent, *In re Winship,* 397 U.S. 145 (1970).

In *Winship,* on its way to finding that proof beyond a reasonable doubt was required at the adjudicatory stage of a delinquency proceeding, the United States Supreme Court discussed whether the reasonable doubt standard was, in general, a requirement of due process. The court resoundingly found that reasonable doubt was part of the protections provided by the due process clause, stating:

"Lest there remain any doubt about the constitutional stature of the reasonable doubt standard, we explicitly hold that the due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. at 364.

The United States Supreme Court in *Jones* addressed the provisions of a federal car-jacking statute that set higher penalties when the offense resulted in death or serious bodily injury. The defendant was informed at his arraignment that he faced a maximum of 15 years. At his trial, the jury instructions made no mention of serious bodily injury. *Jones,* 526 U.S. at 231. After conviction, the pre-sentence report recommended that the defendant be sentenced to 25 years, because of the occurrence of serious bodily injury.[12] The trial court found that the al-

---

12. The report noted that one of the victims testified that another defendant had caused his ear to bleed profusely and a physician had concluded that the victim's eardrum had been perforated, causing some permanent hearing loss and numbness. *Jones,* 526 U.S. at 231.

legation of serious bodily injury was supported by a preponderance of the evidence and imposed a 25-year sentence. *Id.* The defendant appealed, eventually reaching the United States Supreme Court, which agreed with the defendant, finding that serious bodily injury was an element of the offense and, therefore, had to be proven beyond a reasonable doubt and submitted to a jury for its verdict. *Jones,* 526 U.S. at 252.

After examining due process cases, the *Apprendi* court found such review confirmed its past decision. The court explained that "it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, citing *Jones,* 526 U.S. at 252-53 (Stevens, J., concurring).

In this case, the defendant asserts that his assessment as a sexual predator and the application of Megan's Law II that automatically follows such assessment run afoul of *Apprendi,* and mandates a finding that Megan's Law II is unconstitutional. This argument is based on the assertion that certain provisions of Megan's Law II constitute punishment. Therefore, this court is first charged with determining whether such provisions constitute punishment.

We have focused our attention in this case on two key provisions of Megan's Law II. The first of these is set forth at 42 Pa.C.S. §9798[13] and addresses public notifi-

---

13. 42 Pa.C.S. §9798 (West Supp. 2001).

cation of the offender's status as a sexually violent predator. This notification includes, (1) the distribution to his neighbors of a written notice containing the offender's name, home address and photograph, plus the statement that he has been judicially declared to be a sexually violent predator; (2) the distribution of this same notice to all public and private school systems, county children and youth service agencies, and licensed day care, preschool and family day care organizations located in the municipality in which the offender resides; (3) distribution of the notice to any college within a thousand feet of the offender's home; and (4) distribution of the above information to the general public, either upon request or by any "electronic means" that the state may choose. 42 Pa.C.S. §§9798(a), (b) and (d) (West Supp. 2001). Although under the previous statute, the status of an offender as a sexually violent predator could be terminated by the court, under Megan's Law II, this status is no longer subject to review.[14]

The second provision we have chosen to examine mandates that each sexually violent predator attend monthly counseling sessions at their own expense, subject to compliance supervision by the state police and employees of the parole board during the lifetime term in which they are required to report. See 42 Pa.C.S. §§9795.1(b)(3), 9796, 9799.4 (West Supp. 2001). Should the defendant fail to comply, he is subject to a maximum term of lifetime incarceration. 42 Pa.C.S. §9796(e)(2) (West Supp. 2001).

---

14. See 42 Pa.C.S. §9794(f) *(repealed)*.

We do not minimize the importance that these provisions play in serving one of the most basic and important governmental interests, that of protecting the public. With regard to notification, it is self-evident that, if the public is aware of a potential danger, steps can be taken to avoid it. Indeed, it was the unknown presence of a dangerous sexual predator that resulted in the death of Megan Kanka and initiated the enactment in New Jersey of the original Megan's Law. N.J. Stat. Ann. §2C:7-1, et seq. (West Supp. 2001). Similarly, mandatory lifetime counseling provides the government with an effective method of monitoring the offender's progress, or lack thereof, while additionally providing structured support to the offender to reduce the likelihood of reoffense. Nevertheless, this court is not called upon, nor is it empowered to determine whether the notification and counseling provisions are necessary or beneficial. Rather, we must determine whether they constitute punishment imposed upon the offender without such offender being afforded the full panoply of due process rights. We hold that they do, for the reasons stated below.

## II. *Application of* Verniero *and* Artway

The defendant faces a maximum sentence of not less than 10 nor more than 20 years on each of five counts of involuntary deviate sexual intercourse. He faces a maximum sentence of not less than two and one-half nor more than five years on each of three counts of corruption of minors. Having been found to be a sexual predator, the defendant now faces the additional imposition of the notification and counseling provisions described above.

Unless these provisions constitute punishment, there is no constitutional impact and *Apprendi* would not apply.

This court has the guidance of two cases, *Artway v. New Jersey,* 81 F.3d 1235 (3d Cir. 1996) and *E.B. v. Verniero,* 119 F.3d 1077 (3d Cir. 1997) in making this determination.[15] In *Artway,* the court addressed the issue of whether the New Jersey Megan's Law registration provision constituted punishment. In *Verniero,* the court confronted a challenge to the same statute's notification provisions and utilized the *Artway* analysis.

The manner in which *Artway* and *Verniero* found the New Jersey registration and notification schemes to be constitutional is significant. The analysis of punishment and its review of related United States Supreme Court decisions apply directly to the present case. The analysis developed in *Artway,* and refined in *Verniero,* to determine whether a particular provision constitutes punishment, involves a three-prong inquiry. To be considered non-punishment, a measure must pass each part of this three-prong inquiry, looking at (1) actual purpose, (2) objective purpose, and (3) effect. *Artway,* 81 F.3d at 1263.

## A. Actual Purpose Analysis

The first prong of the analysis requires the court to examine the actual purpose of the notification and counseling provisions of Megan's Law II. The issue is whether these provisions relate to a legitimate legislative purpose.

---

15. The *Artway/Verniero* test discussed in part II was specifically adopted by the Pennsylvania Supreme Court in *Commonwealth v. Gaffney,* 557 Pa. 327, 332, 733 A.2d 616, 619 (1999).

The actual purpose prong looks to the legislative intent and, whether the adverse effect on an individual is the result of the legislature's desire to punish past conduct, or is merely a consequence of a legitimate effort to remedy a particular problem. *Artway,* 81 F.3d at 1264. We find that both provisions pass this first prong.

### 1. *Notification*

In *Artway,* the court looked at the declared policy of identifying and alerting the public to enhance safety and prevent and quickly resolve incidents. *Id.* This is the type of language that indicates a regulatory rather than punitive purpose, thus meeting the first prong. *Id.* The *Verniero* court looked at the New Jersey legislature's stated purpose, which was remedial, and found they had no basis for questioning such purpose. *Verniero,* 119 F.3d at 1097. Both *Artway* and *Verniero* found the statute to satisfy the first prong.

The declared policy of Megan's Law II is to protect public safety. 42 Pa.C.S. §9791(b) (West Supp. 2001).[16]

---

16. 42 Pa.C.S. §9791(b):

"It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive."

The statute also states that sexually violent predators pose a high risk of reoffense and that "protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. §9791(a)(2) (West Supp. 2001). The protection of the public is a legitimate legislative purpose identified in both *Artway* and *Verniero*. The notification requirements of Megan's Law II include neighbors, schools and day care facilities. 42 Pa.C.S. §9798(b) (West Supp. 2001). Notifying these groups that an individual is a sexual predator puts potential victims on notice. A well-informed and forewarned population is a better protected one.

## 2. *Counseling*

The protection of the public, a legitimate legislative purpose, is also well served by the counseling provisions. Megan's Law II, in its section on legislative findings, states that "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration . . . ." 42 Pa.C.S. §9791(a)(2) (West Supp. 2001). The counseling provisions require a sexual predator to attend counseling sessions every 30 days in state-approved programs. 42 Pa.C.S. §9799.4 (West Supp. 2001). Such counseling requirements serve to minimize the risk of reoffense, thereby serving the legitimate legislative purpose of protecting the public.

## B. Objective Purpose Analysis

The second prong of the analysis requires the court to examine the objective purpose of the notification and counseling provisions of Megan's Law II. The relevant

issue is whether these provisions are reasonably related to a non-punitive and legitimate legislative goal. We find that both the notification and counseling provisions of Megan's Law II fail to meet this requirement.

## 1. *Notification*

Megan's Law II includes a provision that allows for widespread public notification, including by electronic means. 42 Pa.C.S. §9798(d) (West Supp. 2001). The notification provision is not carefully tailored or limited in any significant way. The notification provisions of Megan's Law II are unlike the New Jersey scheme that passed constitutional muster in *Verniero,* where the court noted with favor that "[t]he fundamental premise of Megan's Law is that registration and carefully tailored notification can enable law enforcement and those likely to encounter a sex offender to be aware of a potential danger and 'to stay vigilant against possible re-abuse.'" *Verniero,* 119 F.3d at 1098 (citing *Artway,* 81 F.3d at 1265). In the New Jersey statute, a three-tier system is established that is based upon an assessment of the risk of reoffense. *Verniero,* 119 F.3d at 1083. Only the highest risk offenders, those classified as tier 3, are subject to the requirement of community notification. *Id.* The New Jersey Megan's Law notification provisions were described as "a measured response to the identified problem that does not subject all registrants to dissemination of information beyond law enforcement personnel." *Verniero,* 119 F.3d at 1098. Further, even offenders posing the greatest risk of reoffense are not subject to unlimited public dissemination. *Id.* The New Jersey statute

provides further limitation by including the "likely to encounter" requirement. *Verniero,* 119 F.3d at 1083. Finally, as stated, a New Jersey offender can apply after 15 years, to terminate the registration requirements. *Verniero,* 119 F.3d at 1083.

In contrast, the notification requirements of Megan's Law II provide for wide dissemination of personal information. The likelihood exists for possible publication and transmission of such information over the internet. 42 Pa.C.S. §9798(d) (West Supp. 2001).

The stigma of public notification is a major consequence of the application of Megan's Law II. Stigmatization and the public humiliation that emanates from public notification of criminal behavior, have historically been used as a form of punishment. See *e.g., U.S. v. William Anderson Co.,* 698 F.2d 911, 913 (8th Cir. 1982). Megan's Law II provides for continuous and unrestricted notification of the offender's status as a sexually violent predator. Unlike the statute reviewed by the *Verniero* court, there exists no limited nexus between the widespread dissemination of this information and those whom the government seeks to protect. When coupled with the failure to provide for subsequent judicial review or discontinuance for cause shown, the notification provisions can only be viewed as punitive.

## 2. *Counseling*

Although counseling provisions were not at issue in *Verniero,* the requirements that a statute be carefully tailored and present a measured response in order to avoid failing this second prong, still apply. Once again, how-

ever, Pennsylvania has failed to provide any limitations that would preclude a finding that this requirement is punitive.

Counseling is a traditional form of punishment and has been recognized as such by legislative enactment.[17] It is usually ordered as a condition of supervision and the requirement terminates upon the expiration of supervision.

The effect of the structure created by Megan's Law II is to place the offender under intense supervision for his entire lifetime. There is no opportunity for review or termination. The offender must attend counseling sessions at least monthly, at his own expense. 42 Pa.C.S. §9799.4 (West Supp. 2001). He must verify his compliance to the state police. 42 Pa.C.S. §9796(a) (West Supp. 2001). A maximum term of life imprisonment may be imposed for the failure of the offender to comply. 42 Pa.C.S. §9796(e)(2) (West Supp. 2001).

The failure to provide for a method of periodic review is clear evidence that the effect of this provision is punitive, rather than protective or rehabilitative. Even if a counselor concludes that an offender has been rehabilitated or that there is no risk of reoffense, the offender must continue to attend counseling. There is no method of judicial or administrative proceeding by which it can be determined whether the public is in need of further

---

17. See Sentencing Act, 42 Pa.C.S. §9721(a) (West 1999) (in determining the sentence to be imposed, the court may select probation as one of many alternatives); and 42 Pa.C.S. §9754 (West 1999) (a court may impose such reasonable conditions as it deems necessary to its order of probation).

protection which would be served by continuation of counseling. This is different than similar enactments that have not been found to be punitive. In *Kansas v. Hendricks,* 521 U.S. 346 (1997), the United States Supreme Court found that a civil commitment procedure that provided for periodic review was not punitive. Though not addressed specifically by the *Verniero* court, the New Jersey statute also provides for periodic review.

The scope of the mandatory lifetime counseling provisions of Megan's Law II is so broad that those provisions are not reasonably related to a non-punitive and legitimate legislative goal.

## C. Effects Analysis

The third prong of the *Artway/Verniero* test is identified as the effects analysis. It requires the court to determine whether the effects of either the notification or mandatory lifetime counseling provisions of Megan's Law II rise to the level of extremely onerous burden, the sting of which is so severe to compel a conclusion that it constitutes punishment.

Having determined that both provisions fail to pass the second prong of the test, as set forth above, we need not specifically conclude that they also fail the third prong in order to conclude that the defendant is entitled to receive the full protection of due process under *Apprendi.* Nevertheless, an overview of the analysis of these provisions under the third prong of the test is warranted.

## 1. *Notification*

The court in *Verniero* concluded that the effects of the notification requirements of the New Jersey statute did not cause such a significant sting so as to compel a conclusion that it constituted punishment. *Verniero,* 119 F.3d at 1101. In the process, the court looked at both the direct and indirect effects on an offender brought about by notification. The direct effects include the offender's ability to live and work in a community, to move from place to place, to obtain a professional license and to secure governmental benefits. *Verniero,* 119 F.3d at 1102. The court concluded that these direct effects were not impacted by the limited notification of the offender's designation as a sexual offender. *Verniero,* 119 F.3d at 1107.

The indirect effects examined by the court include humiliation, isolation, the impact on personal and family relationships, the loss of opportunities and an increased risk of private violence. The court then examined these effects in light of the holdings of the United States Supreme Court in such cases as *Paul v. Davis,* 424 U.S. 393 (1976), *Roe v. Wade,* 410 U.S. 113 (1973), and *Kansas v. Hendricks,* 521 U.S. 346 (1997), and determined that the impact of notification on an offender was not of sufficient magnitude to be worthy of additional protection. In addressing the reputational effects, the court stated:

"It necessarily follows that some limit must be placed on the situations in which a measure's sting alone, despite its remedial purpose and effect, will constitute pun-

ishment under those clauses and that classification as punishment on the basis of sting alone must be reserved for cases involving deprivation of the interest most highly valued in our constitutional republic." *Verniero,* 119 F.3d at 1103.

In addressing the risk of vigilante justice that could be caused by notification, the court held:

"Nevertheless, we believe the Supreme Court would not regard this indirect effect of Megan's Law as sufficiently burdensome to require classification of the law as punitive. Certainly, in terms of the impact on the everyday lives of registrants, the burden of this aspect of Megan's Law pales by comparison to the civil commitment of sex offenders sanctioned in *Hendricks." Verniero,* 119 F.3d at 1105.

Under Megan's Law II, the effects of notification are more severe on the offender than those caused by the New Jersey statute. This is due to the more liberal access and broader dissemination provided in our statute. Nevertheless, the nature of the interests that are affected are identical, both as to reputation and the potential for private injury. It must be concluded that under the standard established by the court in *Verniero,* these effects do not rise to the level of significance necessary to compel a finding that notification constitutes punishment.

We note that a contrary conclusion would likely be reached when viewed through the prism of protection provided by the Pennsylvania Constitution. Our Supreme Court has recognized that the Pennsylvania Constitution may provide greater protection than the minimum guarantees established by the United States Constitution.

*Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). In *Commonwealth v. Gaffney,* 557 Pa. 327, 733 A.2d 616 (1999), our Supreme Court applied the *Verniero* test in holding that the registration requirement of Megan's Law did not constitute punishment for the purpose of the application of the ex post facto clause.[18] The court found that it was necessary to examine the claim under both the United States Constitution, as well as the Pennsylvania Constitution, since a disharmony may exist between the protections afforded by each. *Gaffney,* 557 Pa. at 338, 586 A.2d at 622. This additional level of scrutiny, while not addressed herein, would likely lead to a conclusion that the notification requirements of Megan's Law II constitute punishment.

## 2. *Counseling*

Even under the high threshold of the effects analysis established by *Verniero,* the requirement of mandatory lifetime counseling in Megan's Law II would likely constitute punishment. As described above, Megan's Law II requires an offender to attend counseling sessions not less than monthly and to verify compliance with the state police. This requirement remains in force for the life of the offender and may not be terminated. There is no mechanism for review, even if it were to be concluded that counseling was no longer necessary or of benefit to the offender or the public. The offender faces a penalty of life imprisonment for the failure to comply with these requirements.

---

18. U.S. Const. Art. I, §10, cl. 1.

One of the highly valued rights recognized by *Verniero* as worthy of protection is the freedom to move from place to place. *Verniero,* 119 F.3d at 1101. This is a right that has historically and consistently been characterized as fundamental by the United States Supreme Court. See *Attorney General of New York,* 476 U.S. 898 (1986); *Kent v. Dulles,* 357 U.S. 116 (1958).

The mandatory lifetime counseling requirements of Megan's Law II would interfere with, if not totally preclude, the ability of the defendant to freely relocate or travel. The sting of this provision would appear to be such that it would be deemed to be punishment, hence requiring the protections mandated by *Apprendi.*

## CONCLUSION

There is a strong presumption a statute is constitutional and a heavy burden of persuasion on the party that makes such challenge. *Commonwealth v. Williams,* 557 Pa. 285, 304, 733 A.2d 593, 603 (1999) (citing *Commonwealth v. Barud,* 545 Pa. 297, 304, 681 A.2d 162, 165 (1996)). This court finds that the defendant here has met this burden as to two parts of Megan's Law II, the notification and counseling provisions. 42 Pa.C.S. §§9798 and 9799.4 (West Supp. 2001). The notification and counseling provisions constitute punishment by increasing the maximum penalty faced by the defendant on the original charges, while not affording the defendant the protections of the full panoply of due process rights required by *Apprendi.*

## ORDER

And now, October 22, 2001, following argument and upon consideration of briefs, it is hereby ordered and decreed that defendant Barry Lee Breyer's petition to preclude imposition of sanctions provided by 42 Pa.C.S. §9791 et seq. is granted.