# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tommy Lee Jackson,    :
                 Petitioner    :
                              :
        v.                     :
                              :
Commonwealth of Pennsylvania,  :   No. 388 M.D. 2014
              Respondent :   Argued: June 6, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: July 7, 2016


Before this Court, in our original jurisdiction, are cross-applications for summary relief filed by Tommy Lee Jackson (Jackson) and the Pennsylvania State Police (PSP) on Jackson's Petition for Review in the Nature of a Writ of Mandamus[1] (Petition). In his Petition, Jackson asks this Court to direct the PSP to

---

[1] "The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty. Mandamus cannot issue to compel performance of a discretionary act or to govern the manner of performing the required act. [Courts] may issue a writ of mandamus where the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists. . . . Thus, we have held that mandamus will lie to compel action by an official where his refusal to act in the requested way stems from his erroneous interpretation of the law." *Fagan v. Smith*, 41 A.3d 816, 818 (Pa. 2012). (Citations and internal quotes omitted.) While just styled as a mandamus action, Jackson's Petition requests this Court to declare that SORNA, as applied to Jackson, is unconstitutional because it violates the Equal Protection Clause of the United States Constitution and, therefore, Jackson is no longer required to register with the PSP as a sex offender. This claim asserting that SORNA is unconstitutional sounds in declaratory and injunctive relief, not mandamus.

remove his name from the list of offenders required to comply with the provisions of the Act known as Megan's Law IV or the Sexual Offender Registration and Notification Act (SORNA)[2] because he completed his registration period prior to the law's enactment or, in the alternative, hold that the application of SORNA to Jackson violates the Equal Protection Clause of the United States Constitution. For the following reasons, we grant Jackson's application on equal protection grounds and deny the cross-application of the PSP.

## I.

The following facts are taken from the parties' joint stipulation of facts. In October 1990, Jackson was charged with violation of Texas Penal Code §21.11, Indecency with a Child by Contact. On or about April 12, 1991, Jackson

---

[2] Sections 9799.10-9799.41 of the Sentencing Code, 42 Pa. C.S. §§9799.10-9799.41. SORNA is the fourth iteration of Megan's Law. Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted on October 24, 1995, but because it was largely ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, 733 A.2d 593 (Pa. 1999), Megan's Law II, the Act of May 10, 2000, P.L. 74, No. 18, was enacted. "Our Supreme Court held that some portions of Megan's Law II were unconstitutional in *Commonwealth v. Gomer Williams*, 574 Pa. 487, 832 A.2d 962 (Pa. 2003), and the General Assembly responded by enacting Megan's Law III on November 24, 2004. The United States Congress expanded the public notification requirements of state sexual offender registries in the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§16901-16945," and the states were required to implement its provision or lose certain federal funding. *Taylor v. Pennsylvania State Police*, 132 A.3d 590, 595 n.7 (Pa. Cmwlth. 2016). In response, our General Assembly passed SORNA on December 20, 2011, with the declared purpose of "bring[ing] the Commonwealth into substantial compliance with the Adam Walsh Child Protection and Safety Act of 2006." 42 Pa. C.S. §9799.10(1). "SORNA went into effect a year later on December 20, 2012. Megan's Law III was also struck down by our Supreme Court for violating the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. *Commonwealth v. Neiman*, 624 Pa. 53, 84 A.3d 603, 616 (Pa. 2013). However, by the time it was struck down, Megan's Law III had been replaced by SORNA." *Taylor*, 132 A.3d at 595, n.7.

pleaded guilty to one count of Indecency with a Child by Contact and was sentenced to ten years' probation. In May 1993, Jackson violated his probation by failing, *inter alia*, to report to the probation office and pay court costs. He was subsequently resentenced to ten years imprisonment, for which he served five years in prison and the remaining five years on parole. Jackson was discharged from all supervision on January 15, 2003.

Pursuant to Texas' version of Megan's Law,[3] Jackson registered as a sexual offender in the State of Texas in 1997, 2000, 2001 and 2002. Jackson moved to the State of Delaware in 2002 where he was likewise required to register as a sexual offender, and then moved to the Commonwealth of Pennsylvania in June 2004. By the time he moved to Pennsylvania, Jackson had been registering as a sex offender in his previous states of residence for approximately six years.

When Jackson moved to Pennsylvania in 2004, Megan's Law II[4] was in effect and Jackson's Texas conviction for Indecency with a Child by Contact required him to register with the PSP for ten years.[5] In 2008, Jackson requested a

---

[3] *See* Act of May 26, 1991, 72d Leg., ch. 572 §1, 1991 Tex. Gen. Laws 2029. The Commonwealth's first sexual offender registration statute, referred to as Megan's Law I, Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was not enacted until October 24, 1995, and became effective 180 days thereafter.

[4] Act of May 10, 2000, P.L. 74, *formerly* 42 Pa. C.S. §§9791-9799.7.

[5] The PSP categorized Jackson's Texas conviction for Indecency with a Child by Contact as being similar to the Pennsylvania crime of Indecent Assault, 18 Pa. C.S. §3126, graded as a first-degree misdemeanor and carrying a ten-year registration period. *See* Section 9795.1(a) of Megan's Law II, *formerly* 42 Pa. C.S. §9795.1(a).

review of his sexual offender registration status to which the PSP responded that his period of registration began on June 25, 2004, when he ostensibly first registered with the PSP after moving to Pennsylvania, and would run until June 25, 2014.

SORNA was enacted on December 20, 2011, and went into effect a year later, establishing a three-tier classification system for sexual offenders. *See* Section 9799.14 of SORNA, 42 Pa. C.S. §9799.14. On or about December 3, 2012, the PSP notified Jackson that pursuant to SORNA, he was now classified as a Tier III offender and would have to register quarterly every year for the rest of his life. Jackson is no longer on probation or parole for his Texas conviction and is still currently registering with the PSP as a sexual offender pursuant to SORNA.

## II.

Both parties filed applications for summary relief.[6] Jackson's application for summary relief asserts that under Megan's Law III,[7] he was entitled to credit for the six years he registered as a sex offender out-of-state prior to moving to Pennsylvania. Jackson contends that under that version of Megan's

---

[6] Pa. R.A.P. 1532(b). An application for summary relief may be granted "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter . . . if the right of the applicant thereto is clear." *Id.* The application will be denied where there are material facts in dispute or it is not clear that the applicant is entitled to judgment as a matter of law. *Brown v. Department of Corrections*, 932 A.2d 316, 318 (Pa. Cmwlth. 2007).

[7] Section 9795.2(b)(4) of Megan's Law III, *formerly* 42 Pa. C.S. §9795.2(b)(4). This provision of Megan's Law III expired on December 20, 2012, per Section 9799.41 of SORNA, 42 Pa. C.S. §9799.41.

4

Law, his ten-year registration period expired prior to the enactment of SORNA on December 20, 2012, and he is no longer required to register as a sex offender. In the alternative, Jackson asserts that the PSP's application of SORNA discriminates against him by not giving him credit for the years he complied with his out-of-state registration requirements, and he is treated differently than those sexual offenders who began their registration period in Pennsylvania.

The PSP's cross-application for summary relief asserts that Jackson is classified under SORNA as a Tier III sexual offender based on his Texas criminal conviction, which is the equivalent of the Tier III Pennsylvania offense of Indecent Assault, 18 Pa. C.S. §3126(a)(7).[8] The PSP argues that application of SORNA to Jackson does not violate equal protection because Jackson is treated the same as any Megan's Law II offender whose ten-year registration period was unexpired on the date SORNA went into effect. The PSP also asserts that SORNA is reasonably related to the legitimate state interests of promoting public safety and accountability by ensuring that foreign sex offenders do not move to Pennsylvania to avoid registering.

---

[8] The PSP also asserts that Jackson was required to register as a sex offender for life in Texas (Respondent's Brief at 6), a representation that Jackson's Counsel disputed at oral argument. More importantly, the PSP's assertion is in direct contravention of the Stipulation of Facts and a letter that it sent to Jackson regarding his registration requirement, stating that he only had to register for ten years.

## III.

### A.

Jackson contends that he should not be required to register under SORNA because he completed his ten-year registration requirement prior to SORNA's effective date because he should be given credit for the approximate six years he registered in Texas and Delaware before moving to the Commonwealth. Megan's Law III did give credit "as a result of prior compliance with registration requirements" to sex offenders convicted in another jurisdiction and who met certain criteria. Section 9795.2(b)(iii) of Megan's Law III, *formerly* 42 Pa. C.S. §9795.2(b)(iii). However, Megan's Law III, including this provision that Jackson relies upon, was declared unconstitutional for violation of the single subject rule of Article III, Section 3 of the Pennsylvania Constitution. *See Commonwealth v. Neiman*, 84 A.3d 603 (Pa. 2013).

Megan's Law II was in effect when Jackson moved to Pennsylvania in 2004 making it the operable statute. Under Megan's Law II, sex offenders entering the Commonwealth were required to register with the PSP: (1) if they were convicted of an offense that was similar to an enumerated Pennsylvania Megan's Law predicate offense, or (2) if they were convicted of an offense that required them to register as a sex offender in their originating jurisdiction. *See* section 9795.2(b)(1) of Megan's Law II, *formerly* 42 Pa. C.S. §9795.2(b)(1).

Jackson stipulates that neither Megan's Law II nor SORNA provide "credit" to sex offenders for the time period in which they properly registered in another jurisdiction. Jackson also admits that in October 1990, he pleaded guilty to

6

the charge of Indecency With a Child by Contact in the state of Texas and that this offense is similar to the Pennsylvania offense of Indecent Assault, as the victim was under the age of 13, 18 Pa. C.S. §3126(a)(7), which, in 2004, was graded as a first degree misdemeanor. Under Megan's Law II, a conviction for Indecent Assault graded as a first degree misdemeanor required individuals to register with the PSP for a period of ten years. *See* section 9795.1(a)(1) of Megan's Law II, *formerly* 42 Pa. C.S. §9795.1(a)(1).

Because Jackson was convicted of an offense similar to an enumerated Pennsylvania Megan's Law predicate offense, he was required to register as a sex offender with the PSP for ten years. If Jackson is not given credit for the time he registered out of state, his ten-year period of required registration under Megan's Law II would not have expired until 2014. SORNA states that individuals "who had not fulfilled [their] period of registration as of December 20, 2012" were subject to its provisions, including the lifetime registration requirement. *See* section 9799.13(3)(i) of SORNA, 42 Pa. C.S. §9799.13(3)(i). Jackson would fall under this provision of SORNA because he had not completed his ten-year period of registration prior to December 20, 2012, *unless* he was unconstitutionally denied credit for the years he registered in other states.[9]

---

[9] Jackson has not raised the issue that the PSP's failure to give him credit for the time he spent registering out-of-state violates the Full Faith and Credit Clause of the United States Constitution, nor does he claim that the PSP improperly classified him as a Tier III offender under SORNA or that SORNA is an *ex post facto* law. We will not address issues which have not been specifically raised because "[i]t is not our role to invent arguments for" a petitioner, *Bruce L. Rothrock Charitable Foundation v. Zoning Hearing Board of Whitehall Township*, 651 A.2d 587, 591 n.9 (Pa. Cmwlth. 1994), especially when that petitioner is represented by counsel.

**B.**

Jackson argues that even if he is subject to SORNA, its application to him violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[10] Jackson asserts that as an out-of-state offender, he is being treated differently than Pennsylvania offenders because SORNA does not provide credit for time spent registering in another jurisdiction, requiring him to

_____

[10] Equal Protection requires that all:

> Persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not absolutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation. Judicial review must determine whether any classification is founded on a real and genuine distinction rather than an artificial one. A classification, though discriminatory, is not arbitrary or in violation of the equal protection clause if any state of facts reasonably can be conceived to sustain that classification. In undertaking its analysis, the reviewing court is free to hypothesize reasons the legislature might have had for the classification. If the court determines that the classifications are genuine, it cannot declare the classification void even if it might question the soundness or wisdom of the distinction.

*Doe v. Miller*, 886 A.2d 310, 315 (Pa. Cmwlth. 2005) (quoting *Curtis v. Kline*, 666 A.2d 265, 267 (Pa. 1995) (footnote and internal citations omitted)).

register for a longer period of time than an individual who committed his predicate offenses in the Commonwealth.

The PSP, in essence, is saying that if you are convicted of an offense in another state, are required to register in that state for ten years, complete that registration, and then move to Pennsylvania, you are still required to register in the Commonwealth for another ten years or a lifetime, depending on how that offense is now classified under SORNA.

In general, economic and social legislation, including legislation creating classifications or categories among criminal offenders, receives rational basis review. *Doe v. Miller*, 886 A.2d 310, 315 (Pa. Cmwlth. 2005). Under this standard, we must first determine whether the challenged statute seeks to promote a legitimate state interest or public value. *Id.* at 316 (citing *Commonwealth v. Albert*, 758 A.2d 1149 (Pa. 2000)). If so, we "must next determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests." *Miller*, 886 A.2d at 316.

The question here then becomes is there a rational basis for requiring Jackson to register for a lifetime when a Pennsylvania offender who committed the same act, on the same day, and who registered for ten years with the PSP is not subject to a lifetime registration requirement under SORNA because he is considered to have completed his registration period prior to the law's enactment. More simply, is there a rational basis for this difference in registration

9

requirements based solely on the fact that Jackson's offense occurred in another state.

> When enacting Megan's Law I, the General Assembly stated that:

> It is hereby declared to be the intention of the General Assembly to protect the safety and general welfare of the people of this Commonwealth by providing for registration and community notification regarding sexually violent predators who are about to be released from custody and will live in or near their neighborhood. It is further declared to be the policy of this Commonwealth to require the exchange of relevant information about sexually violent predators among public agencies and officials and to authorize the release of necessary and relevant information about sexually violent predators to members of the general public as a means of assuring public protection and shall not be construed as punitive.

Section 9791(b) of Megan's Law I, *formerly* 42 Pa. C.S. §9791(b); *see also Commonwealth v. Gaffney*, 733 A.2d 616, 619 (Pa. 1999). Megan's Law II contains identical language in that statute's declared purpose. *See Commonwealth v. Gomer Williams*, 832 A.2d 962, 969, 972 (Pa. 2003). Relying solely on this statutory language, our Supreme Court, in both *Gaffney* and *Williams*, determined that the General Assembly's purpose in enacting the respective statutes was not retribution, but to protect public safety.[11]

---

[11] Courts within the Commonwealth have held that the various iterations of Megan's Law sought to promote the legitimate state interest of protecting public safety and welfare. *See Gaffney*, 733 A.2d at 621 (regarding Megan's Law I); *Williams*, 832 A.2d at 986 (regarding Megan's Law II); *Miller*, 886 A.2d at 316 (regarding Megan's Law II); *Coppolino v. Noonan*, 102 A.3d 1254 (Pa. Cmwlth. 2014) (regarding SORNA).

In carrying out that purpose, our General Assembly in Megan's Law II classified individuals differently based on their perceived potential danger to the community. Specifically, sexually violent predators were required to register for their lifetime whereas individuals who were convicted of lesser offenses, referred to as merely sexual offenders, were only required to register for ten years. *See* Section 9795.1 of Megan's Law II, *formerly* 42 Pa. C.S. §9795.1. Presumably under this classification system, sexual offenders were considered less of a danger to the community and, if not convicted of another like offense for ten years, the statute's registration and notification requirements were no longer needed to protect public safety. *See Miller*, 886 A.2d at 316 (stating "courts are free to hypothesize reasons why the legislature created the particular classification at issue" and hypothesizing that Megan's Law II identified the class of sexual offenders as "deserving of attention because of the character of the predicate offenses, the difficulties in rehabilitating offenders, and the consequent concern for re-offense.").

Jackson was classified a sexual offender when he moved to Pennsylvania in 2004 and the PSP admits that he was only required to register for ten years. We can assume then that the PSP did not consider Jackson to pose the same risk to the citizens of the Commonwealth as individuals classified as sexually violent predators who were required to register for life. Because Pennsylvania sexual offenders who completed their ten-year registration period before SORNA was enacted are not required to register for the rest of their lives, requiring Jackson to now register for the rest of his life under SORNA and not count all the years that he has registered in other states, merely because his offense was committed in

11

another state, is not reasonably related to enhancing public safety and welfare. This fact was recognized in Megan's Law III, although that statute was found unconstitutional for other reasons. Consequently, the PSP's decision not to credit Jackson for the approximately six years he spent registering out-of-state is arbitrary and not reasonably related to the object of the Commonwealth's sex offender legislation; therefore, the PSP's application of the law violates the Equal Protection Clause of the United States Constitution.[12]

Jackson's ten-year registration period should have expired sometime in 2008 and there are no allegations that he has committed any new sexual offenses since his 1991 Texas conviction. Because Jackson had successfully completed his registration period prior to SORNA's effective date in December 2012, he was not subject to the act and the PSP erred in mandating that he continue to register as a sexual offender under SORNA.

For the foregoing reasons, we grant Jackson's application for summary relief, deny the PSP's cross-motion, and order that Jackson's name be removed from the list of offenders required to register under SORNA.

 

DAN PELLEGRINI, Senior Judge

---

[12] Jackson has not raised an equal protection claim under the Pennsylvania Constitution. However, we note that "[t]he equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment." *Love v. Borough of Stroudsburg*, 597 A.2d 1137, 1139 (Pa. 1991).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tommy Lee Jackson,        :
                Petitioner   :
                          :
         v.                    :
                          :
Commonwealth of Pennsylvania,   :
                Respondent :  No. 388 M.D. 2014

## **O R D E R**

AND NOW, this 7th day of July, 2016, we hereby grant Tommy Lee Jackson's application for summary relief, deny the Pennsylvania State Police's cross-application for summary relief, and hold that Jackson is no longer required to register as a sexual offender.

 

_____
DAN PELLEGRINI, Senior Judge