IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M. T.,                                          :
                   Petitioner                   :
                                                :
       v.                                       :   No. 94 M.D. 2022
                                                :
The Pennsylvania State Police of the            :
Commonwealth of Pennsylvania,                   :
                   Respondent                   :   Submitted:  March 24, 2023

BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE LORI A. DUMAS, Judge

OPINION BY JUDGE CEISLER                           FILED:  July 11, 2023

Before this Court are the Preliminary Objections filed by the Pennsylvania State Police (PSP) to M.T.'s First Amended Petition for Review for Declaratory Judgment and a Writ of Mandamus (Amended Petition), seeking to dismiss the Amended Petition under Pa.R.Civ.P. 1028(a)(4) for failure to state a legally sufficient claim for relief.  In his Amended Petition, M.T. challenges PSP's imposition of a lifetime sex offender registration requirement based on his prior conviction for sex offenses in the State of Utah on numerous grounds.  For the reasons that follow, we sustain PSP's Preliminary Objections and dismiss the Amended Petition.

## Background

On June 17, 2014, following a jury trial, M.T. was convicted in Utah of eight counts of sexual exploitation of a minor under former Utah Code § 76-5a-3(1)(a).  Am. Pet. ¶¶ 3-4; *see* M.T. Answer to Prelim. Objs., Ex. B.  The Utah conviction was based on M.T.'s possession of child pornography, for which he was arrested in February

2011.  *See* M.T. Answer to Prelim. Objs., Ex. B.[1]  Three months after M.T.'s arrest, but before his conviction, the Utah legislature renumbered Section 76-5a-3(1)(a) of the Utah Code as Section 76-5b-201.[2]  *See* PSP Br. in Support of Prelim. Objs., Ex. B.

M.T.'s criminal "conviction implicated sex offender registration requirements in Utah."  Am. Pet. ¶ 5.  M.T. avers that he subsequently moved to Pennsylvania, after which PSP informed him that he was subject to a 10-year sex offender registration requirement.  *Id.* ¶¶ 6, 8.  However, on April 22, 2021, PSP notified M.T. that he would be subject to lifetime registration, allegedly without any explanation for the change in registration.  *Id.* ¶ 9.[3]

---

[1] The Utah Court of Appeals set forth the details of M.T.'s criminal case as follows:

> In February 2011, Deputy O'Hara of the Utah County Sheriff's Office located an IP address in Utah County that had shared a number of known child pornography files. He learned that the IP address was assigned to a Brigham Young University (BYU) student living in university housing.  Deputy O'Hara obtained a search warrant for the apartment and went with six to eight other officers, including officers from the BYU Police Department, to execute the warrant.

M.T. Answer to Prelim. Objs., Ex. B.  When the officers executed the search warrant at M.T.'s apartment, which M.T. shared with his wife, he "initially claimed to have accidentally downloaded pornography and to have immediately deleted the file-sharing software."  *Id.*  Following the officers' search of M.T.'s computer, "[M.T.] was charged with ten counts of sexual exploitation of a minor, a second-degree felony. . . At trial, defense counsel obtained a directed verdict on two of the ten counts of sexual exploitation of a minor, and [M.T.] was ultimately convicted of the remaining eight counts." *Id.*

[2] Section 76-5b-201(2) of the Utah Code provides:  "An actor commits sexual exploitation of a minor when the actor knowingly possesses or intentionally views child pornography."  Utah Code § 76-5b-201(2) (West 2023).  Section 76-5b-201(3) of the Utah Code provides that the offense of sexual exploitation of a minor is a second-degree felony.  *Id.* § 76-5b-201(3) (West 2023); *see* M.T. Answer to Prelim. Objs., Ex. A.

[3] M.T. does not aver when he moved to Pennsylvania, asserting only that he had been in Pennsylvania "for several years" when PSP changed his registration period from 10 years to lifetime. M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 10.

2

On September 14, 2022, M.T. filed his Amended Petition in this Court's original jurisdiction, seeking a declaration "that [he] is subject to a registration period of 10 years pursuant to [Section 9799.55(a)(1)(i)(A) of the Sex Offender Registration and Notification Act (SORNA II),] 42 Pa. C.S. § 9799.55(a)(1)(i)(A)[,] as a matter of law" and a writ of mandamus compelling PSP to change his registration period to [10] years . . . ." *Id.* ¶ 35. M.T. also seeks a declaration that "as applied to [him], [Section 9799.56 of SORNA II,] 42 Pa. C.S. § 9799.56[,] violates the equal protection clause of the Fourteenth Amendment to the United States Constitution" and "that the reclassification at issue ran afoul of [his] reliance expectations, his right to reputation and due process and was an illegal modification of his criminal justice sentence." *Id.*

On September 15, 2022, PSP filed its Preliminary Objections in the nature of a demurrer to the Amended Petition. Specifically, PSP asserts that M.T. was convicted of sex offenses in Utah that, under Utah law, require lifetime registration as a sex offender. Thus, PSP asserts that M.T. is likewise subject to lifetime registration in Pennsylvania under Section 9799.56(b)(4)(i) and (iii) of SORNA II, 42 Pa. C.S. § 9799.56(b)(4)(i) and (iii). PSP further contends that M.T.'s constitutional claims are foreclosed by the Pennsylvania Supreme Court's decision in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020).

On October 2, 2022, M.T. filed an Answer to the Preliminary Objections, asserting that because the criminal statute under which he was convicted, former Utah Code § 76-5a-3(1)(a), is no longer in effect, Utah law does not impose a reporting obligation for a conviction under that statute. M.T. asserts that he should instead be subject to a 10-year registration requirement, because his Utah conviction is similar to the Pennsylvania offense of possession of child pornography under Section 6312 of the

3

Crimes Code, 18 Pa. C.S. § 6312,[4] which carries a 10-year registration requirement. Thus, M.T. asserts that, under Section 9799.55(a)(1)(i)(A) of SORNA II, 42 Pa. C.S. § 9799.55(a)(1)(i)(A), he is subject to a 10-year registration period. In the alternative, M.T. asserts that PSP's increase of his registration period from 10 years to lifetime violated the equal protection clause, his right to reputation, and the prohibition of *ex post facto* laws.

Both parties have also filed briefs with this Court in support of their respective positions.[5]

## Analysis

### 1. Applicable Registration Period

PSP first asserts that the Amended Petition fails to state a legally sufficient claim because M.T.'s lifetime registration obligation under SORNA II is based on his Utah conviction for sexual exploitation of a minor, which requires lifetime registration in Utah. In response, M.T. asserts that the statute of conviction, former Utah Code § 76-5a-3(1)(a), has been "repeal[ed]" and, as a result, Utah's sex offender registration law does not impose a registration requirement on a person convicted under former Section

---

[4] Section 6312(d) of the Crimes Code states: "Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." 18 Pa. C.S. § 6312(d).

[5] In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner cannot succeed on his claim." *Id.* at 1083. "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

76-5a-3(1)(a).  M.T. Answer to Prelim Objs. ¶ 11.  Thus, M.T. contends that because Section 76-5a-3(1)(a) is "no longer on the books," PSP must impose the registration period applicable to the equivalent criminal offense under Pennsylvania law, which is 10 years.  *Id.* ¶ 10.  We disagree.

Subchapter I of SORNA II governs the continued registration of sex offenders who were convicted of a sex offense committed between April 22, 1996, and December 20, 2012, and whose period of registration had not expired at the time of SORNA II's enactment in 2018.  *See* 42 Pa. C.S. §§ 9799.52(1) and 9799.54(a)(4).  Section 9799.56(b) of Subchapter I applies to individuals, such as M.T., who were "convicted or sentenced by a court . . . in jurisdictions outside this Commonwealth."  *Id.* § 9799.56(b).  In particular, Section 9799.56(b)(4)(iii) provides in relevant part:

> [*I*]*f the individual has been convicted or sentenced by a court . . . for an offense listed in* [*S*]*ection 9799.55(a) or an equivalent offense, the individual shall be*, notwithstanding [S]ection 9799.53, *considered an offender and subject to registration under this subchapter.*  The individual shall also be subject to the provisions of this [S]ection and [S]ections 9799.60 and 9799.63(c)(2).  The individual shall be subject to this subchapter for *a period of 10 years or for a period of time equal to the time for which the individual was required to register in the other jurisdiction . . . , whichever is greater*, less any credit due to the individual as a result of prior compliance with registration requirements.

*Id.* § 9799.56(b)(4)(iii) (emphasis added).  The list of offenses in Section 9799.55(a) of Subchapter I includes "18 Pa. C.S. § 6312 (relating to sexual abuse of children)," which criminalizes the possession of child pornography and carries a 10-year registration obligation.  *Id.* § 9799.55(a)(1)(i)(A); *see id.* § 9799.55(a)(3) (stating that the 10-year registration period applies to individuals who reside in Pennsylvania but

"who have been convicted of offenses similar to the crimes" listed in Section 9799.55(a)(1) and (2) in another state).[6]

Pursuant to Section 9799.56(b)(4)(iii) of Subchapter I, we must look to Utah law to determine whether the registration obligations for the equivalent offenses in Utah and Pennsylvania differ. M.T. was convicted in Utah of sexual exploitation of a minor under former Section 76-5a-3(1)(a) of the Utah Code, renumbered as Section 76-5b-201. Under Utah law, a conviction for sexual exploitation of a minor requires lifetime registration. *See* Utah Code § 77-41-105(3)(c)(1) (West 2023) ("An offender convicted as an adult of an offense listed in Section 77-41-106 *shall, for the offender's lifetime, register each year . . . .*") (emphasis added); Utah Code § 77-41-106(11) (West 2023) (identifying Utah Code § 76-5b-201, sexual exploitation of a minor, as an offense subject to lifetime registration). Pennsylvania law, however, imposes a 10-year registration period for the equivalent offense of sexual abuse of children. Therefore, under Section 9799.56(b)(4)(iii) of Subchapter I, M.T. is subject to Utah's longer registration period, which is lifetime registration.[7]

---

[6] The list of offenses in Section 9799.55(a) also includes "18 Pa. C.S. § 6320 (relating to sexual exploitation of children)," which likewise carries a 10-year registration obligation. However, the parties do not dispute that, despite its title, Section 6312 of the Crimes Code is the equivalent Pennsylvania offense in this case.

[7] As this Court recently explained:

Pennsylvania extends full faith and credit to out-of-state [sex offender] registration schemes. *See* 42 Pa.[ ]C.S. § 9799.56(b)(4) (someone who is convicted in "another state" but resides, is employed, or is a student in the Commonwealth, and is required to register under a sexual offender statute of that state where he was convicted, shall register within three business days of arrival in the Commonwealth). *When the Commonwealth considers whether an individual convicted in another state must register as a sex offender, the Commonwealth follows the state of conviction's registration requirements.*

*Rivera v. Pa. State Police*, 255 A.3d 677, 683 (Pa. Cmwlth. 2021) (emphasis added).

Furthermore, PSP asserts that M.T. is also required to register for life under Section 9799.56(b)(4)(i) of Subchapter I, which provides in relevant part:

> If the individual has been . . . determined under the laws of the other jurisdiction . . . to be *subject to active notification and lifetime registration . . . on the basis of a statute . . . requiring active notification and lifetime registration based solely on the offense for which the individual was convicted*, sentenced or court martialed, *the individual shall, notwithstanding* [S]*ection 9799.53, be considered a sexually violent predator and subject to lifetime registration under* [S]*ection 9799.55(b).*

42 Pa. C.S. § 9799.56(b)(4)(i) (emphasis added).  Again, the Utah Code imposed a lifetime registration obligation on M.T. based on his conviction for sexual exploitation of a minor.  Consequently, pursuant to Section 9799.56(b)(4)(i) of Subchapter I, M.T. is "considered a sexually violent predator and subject to lifetime registration" in Pennsylvania. *Id.*  Therefore, we agree with PSP that under both subsections (i) and (iii) of Section 9799.56(b)(4), M.T. is required to register for life in Pennsylvania.

M.T.'s repeated assertion before this Court that the Utah offense of which he was convicted was "repealed" and is "no longer on the books" is erroneous.  *See* M.T. Answer to Prelim. Objs., ¶¶ 10-11; M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 4-5, 10, 12.  This Court's research reveals that the offense of sexual exploitation of a minor *is* still on the books in Utah; former Section 76-5a-3(1)(a) of the Utah Code was merely "renumbered" as Section 76-5b-201 prior to M.T.'s 2014 conviction. *See State v. Roberts*, 345 P.3d 1226, 1231 n.3 (Ut. 2015) (noting that "[i]n 2011, the [Utah] Legislature renumbered [S]ection 76-5a-3 as [Section] 76-5b-201 and made minor change to its substance"); *see also* PSP Br. in Support of Prelim. Objs., Ex. B (2022 West/Thomson Reuters printout showing that Section 76-5a-3 of the Utah Code was "[r]enumbered as § 76-5b-201," "eff[ective] May 10, 2011"); *id.*, Ex. A (printout from the Utah Department of Corrections Sex and Kidnap Offender Registry, dated March

2, 2015, identifying M.T.'s offense as "76-5b-201 - SEXUAL EXPLOITATION OF MINOR/2ND DEGREE FELONY") (capitalization in original). Thus, contrary to M.T.'s assertion, former Section 76-5a-3(1)(a) of the Utah Code was not repealed or otherwise removed from the Utah Code.

Accordingly, we sustain PSP's preliminary objection challenging M.T.'s failure to state a claim that PSP imposed an incorrect registration period under Subchapter I of SORNA II based on his Utah conviction.

## 2. Constitutional Claims

Next, PSP asserts that each of M.T.'s constitutional claims fail to state a legally sufficient claim for relief. In response, M.T. maintains that PSP's imposition of lifetime registration on him violates his equal protection and reputational rights and is contrary to the prohibition of *ex post facto* laws.

## A. Equal Protection

M.T. asserts that the lifetime registration requirement imposed by Section 9799.56(b)(4) of Subchapter I, as applied to him, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[8] In support of this claim, M.T. asserts that he is being treated differently than similarly situated sex offenders in Pennsylvania merely because he was convicted of possessing child pornography in Utah. According to M.T., "there is no rational basis for making him register for life *merely because he was convicted in Utah* when every single person convicted of possessing child pornography in Pennsylvania is only required to register for 10 years." M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 7-8 (emphasis in original).

Equal protection is the constitutional principle that "like persons in like circumstances will be treated similarly" under the law. *Doe v. Miller*, 886 A.2d 310,

_____

[8] The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

8

315 (Pa. Cmwlth. 2005), *aff'd*, 901 A.2d 495 (Pa. 2006). Generally, "economic and social legislation, including legislation creating classifications or categories among criminal offenders, receives rational basis review." *Jackson v. Com.*, 143 A.3d 468, 474 (Pa. Cmwlth. 2016). In assessing whether a rational basis exists, "we must first determine whether the challenged statute seeks to promote a legitimate state interest or public value." *Id.* at 476. We then examine whether the legislative classification "'is reasonably related to accomplishing that articulated state interest or interests.'" *Id.* (quoting *Doe*, 886 A.2d at 316).

Here, M.T. specifically invokes the "class of one" theory of equal protection, *see* M.T. Br. in Opp'n to Prelim. Objs. at 6, which our Court has explained as follows:

> The "class of one" theory . . . provides that a plaintiff states a claim for violation of the Equal Protection Clause *when he "alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."* A class of one claim alleges discrimination, not because of membership in a particular class (e.g., race or gender), but *because of an official's "ill will" or "spiteful effort" to harm him, or some other irrational reason.* To allege an equal protection claim under a class of one theory, a plaintiff must show that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."

*Rivera v. Silbaugh*, 240 A.3d 229, 241-42 (Pa. Cmwlth. 2020) (internal citations omitted) (emphasis added).

We conclude that M.T. has failed to sufficiently allege an equal protection violation under the class of one theory. The basis for M.T.'s class of one equal protection claim is that he is being treated differently than Pennsylvania offenders convicted of possession of child pornography solely because he committed his offenses in Utah. However, M.T. is not "similarly situated" to an offender who is required to

9

register under Subchapter I based on a conviction for a Pennsylvania sex offense. The relevant inquiry is whether M.T. is being treated differently than other sex offenders who are required to register under Subchapter I based on *an out-of-state conviction* for a triggering offense. M.T. does not allege that he is being treated differently than similarly situated sex offenders whose registration obligations arose from out-of-state convictions. *See Com. v. Albert*, 758 A.2d 1149,1151 (Pa. 2000) ("The essence of the constitutional principle of equal protection under the law is that *like persons in like circumstances will be treated similarly*.") (emphasis added). Rather, under Section 9799.56(b)(4)(i) and (iii) of Subchapter I, M.T. is being treated in the same manner as any other sex offender who is subject to lifetime registration based on a conviction in a state that has more stringent registration requirements than Pennsylvania. M.T. also does not allege that PSP intentionally singled him out for discriminatory treatment due to spite or vindictiveness, as is required for a class of one equal protection claim. *See Rivera*, 240 A.3d at 242.

We further conclude that a rational basis exists for the difference in treatment of out-of-state sex offenders similarly situated to M.T. The requirements of Section 9799.56(b)(4)(i) and (iii) of Subchapter I are reasonably related to the legitimate state interest of promoting public safety and accountability, because they ensure that lifetime sex offender registrants from other jurisdictions do not move to Pennsylvania to avoid their registration obligations. *See Albert*, 758 A.2d at 1153 (recognizing that "courts are free to hypothesize reasons why the legislature created the particular classification at issue and *if some reason for it exists, it cannot be struck down*, even if the soundness or wisdom in creating the distinction is questioned") (emphasis added); *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998) (under a rational basis analysis, "the government need not have articulated the purpose or rationale supporting its action; *it is enough that*

10

*some rationale 'may conceivably . . . have been the purpose and policy of the relevant governmental decisionmaker'"*) (citation omitted) (emphasis added); *Cornell Narberth, LLC v. Borough of Narberth*, 167 A.3d 228, 243 (Pa. Cmwlth. 2017) ("A 'class of one' claim, like any equal protection claim evaluated under rational basis review, cannot succeed 'if there is *any reasonably conceivable state of facts that could provide a rational basis for the classification.*'") (citation omitted) (emphasis added). Therefore, we conclude that M.T. fails to sufficiently allege a class of one equal protection claim.

Accordingly, we sustain PSP's preliminary objection challenging M.T's failure to state a claim that the lifetime registration requirement imposed by Section 9799.56(b)(4) of Subchapter I, as applied to him, violates the Equal Protection Clause.[9]

## B. Reputation

Next, M.T. asserts that PSP's imposition of lifetime registration under SORNA II violates his right to reputation under the Pennsylvania Constitution.[10] M.T. alleges

---

[9] In his Amended Petition, M.T. also baldly asserts that "[t]o the extent that [he] is being treated differently than citizens of . . . Pennsylvania, the actions of [PSP] have frustrated his . . . constitutional right to travel." Am. Pet. ¶ 32. This Court recently rejected a similar claim involving sex offender reporting requirements based on an out-of-state conviction in *M.S. v. Pennsylvania State Police* (Pa. Cmwlth., No. 98 M.D. 2021, filed Apr. 11, 2022), stating:

> Registrant is not prohibited from entering, residing, working or studying in Pennsylvania. Rather, under the former version of SORNA, *Registrant was merely subject to the same reporting requirements that were imposed by the South Carolina court upon his guilty plea to the sexual offense that he perpetrated upon a minor there*.

*Id.*, slip op. at 9 n.9 (emphasis added). The same rationale applies here, as PSP imposed on M.T. the same registration obligation that was imposed by the State of Utah based on his Utah conviction.

Pursuant to our Court's Internal Operating Procedures, we may cite unreported panel decisions of this Court, issued after January 15, 2008, for their persuasive value. 210 Pa. Code § 69.414(a).

11

that he was initially required to register for a 10-year period when he moved to Pennsylvania. Am. Pet. ¶ 8. He contends that it was only after he had lived in Pennsylvania "for several years" that the PSP decided "[f]or seemingly no good reason" to reclassify him as a lifetime registrant, thereby violating his right to reputation. M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 10-11.

As explained earlier, M.T. was a lifetime sex offender registrant when he moved from Utah to Pennsylvania. *See* Utah Code §§ 77-41-105(3)(c)(1) and 77-41-106(11); PSP Br. in Support of Prelim. Objs., Ex. A. This Court has previously rejected a reputational harm claim by a petitioner who asserted that the imposition of lifetime registration under Subchapter I of SORNA II based on his out-of-state conviction violated his reputational interests, where he was already subject to lifetime registration in the state of conviction. *See T.P.B. v. Pa. State Police* (Pa. Cmwlth., No. 339 M.D. 2018, filed Sept. 13, 2021), slip op. at 10 (holding that the petitioner failed to state a claim that his reputation was harmed when he was subjected to lifetime registration under SORNA II after he moved from Texas to Pennsylvania, because "SORNA II did not subject [him] to increased registration requirements," since he was also a lifetime registrant in Texas), *aff'd*, 278 A.3d 843 (Pa. 2022).

In his Amended Petition, M.T. alleges, without providing any details or supporting documentation, that PSP increased his registration period from 10 years to lifetime at some point after he moved to Pennsylvania. Am. Pet. ¶ 8. The crux of M.T.'s reputation argument is that PSP has now "branded [him] with a scarlet letter"

---

[10] Article I, Section 1 of the Pennsylvania Constitution provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. I, § 1. Our Court has recognized that "reputation is among the fundamental rights that cannot be abridged without compliance with state constitutional standards of due process." *Taylor v. Pa. State Police*, 132 A.3d 590, 605 (Pa. Cmwlth. 2016) (*en banc*).

of a lifetime sex offender registrant, which will "frustrate his ability to seek, obtain and maintain employment in his field of choice: higher education."  M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 9, 11; *see* M.T. Answer to Prelim. Objs. ¶ 16 (averring that M.T. is "pursuing an academic career").  However, even accepting as true M.T.'s allegation that PSP increased his registration to lifetime after his relocation to Pennsylvania, M.T. fails to demonstrate that his present designation as a lifetime sex offender registrant has harmed his reputation, since he was already designated a lifetime registrant by the State of Utah before he moved to Pennsylvania, and he continues to be listed on Utah's sex offender registry. *See* PSP Br. in Support of Prelim. Objs., Ex. A; *see also T.P.B.*, slip op. at 10.  Instead, M.T. reiterates that he was not subject to lifetime registration in Utah because the statute of conviction is no longer on the books, *see* M.T. Br. in Opp'n to Prelim Objs. at 9-10, a claim we have already rejected.[11]

Accordingly, we sustain PSP's preliminary objection challenging M.T.'s failure to state a claim that the imposition of lifetime registration under SORNA II violates his right to reputation.

### C. *Ex Post Facto*

Finally, M.T. asserts that PSP's application of SORNA II to him violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions, because his

---

[11] Curiously, although M.T. maintains that he is not subject to lifetime registration in Utah, he admits in his Amended Petition that his criminal conviction, which post-dated the renumbering of Utah's sexual exploitation of a minor statute, "implicated sex offender registration requirements in Utah."  Am. Pet. ¶ 5.  He also admits that "[p]rior to his departure from Utah . . . , [he] complied with his [registration and notification] obligations . . . under Utah law . . . ." *Id.* ¶ 7.

13

lifetime registration requirement is based on a criminal statute that did not exist until *after* his arrest.[12]  Specifically, he asserts:

> [PSP] is suggesting that this Court should look to Utah Code § 76-5b-201 to determine [M.T.'s] registration obligations.  However, that statute was not in effect until after [his] arrest.  Moreover, [PSP] wants this Court to ignore the fact that (a) the statute of conviction is not on the books, (b) the [sex offender] registration statute in Utah does not reference the statute of conviction, and (c) pretend that [M.T.] was arrested and convicted of the new statute and impose the applicable consequences on him as a result. This course of action is a violation of the *ex post facto* clause and should not be permitted.

M.T. Suppl. Br. in Opp'n to Prelim. Objs. at 12.  We reject this claim.

As explained above, M.T.'s statute of conviction, former Section 76-5a-3(1)(a) of the Utah Code, was not repealed, it was merely renumbered as Section 76-5b-201. The Utah offense of sexual exploitation of a minor, which criminalizes the possession of child pornography, still exists and was the basis of both M.T.'s conviction and his lifetime registration obligation in Utah.  *See* PSP Br. in Support of Prelim. Objs., Exs. A & B.  Because M.T. was already subject to lifetime registration in Utah based on his conviction for sexual exploitation of a minor, PSP's imposition of lifetime registration in Pennsylvania based on that same conviction was not an *ex post facto* violation.  *See Lacombe*, 234 A.3d at 626-27 (holding that the registration requirements in Subchapter I of SORNA II are non-punitive and, thus, retroactive application of those requirements does not violate the constitutional proscription against *ex post facto* laws); *see also J.B.*

_____

[12] The prohibition of *ex post facto* laws is found in Article I, Section 9 of the United States Constitution, which states:  "No Bill of Attainder or *ex post facto* Law shall be passed."  U.S. Const. art. I, § 9.  Article I, Section 10 similarly provides:  "No State shall ... pass any Bill of Attainder, *ex post facto* Law." U.S. Const. art. I, § 10.  Pennsylvania's *ex post facto* provision appears in Article I, Section 17 of the Pennsylvania Constitution, which states:  "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed."  Pa. Const. art. I, § 17.

*v. Pa. State Police*, 288 A.3d 946, 956 (Pa. Cmwlth. 2023) ("While we appreciate that [the p]etitioner would be displeased and possibly negatively affected in public and his community by being placed on the sex offender registry at this point, we note our Supreme Court has found sex offender registration to be non-punitive.") (citing *Lacombe*).[13]

## Conclusion

Accordingly, because we conclude that M.T.'s Amended Petition fails to state a legally sufficient claim for relief, we sustain PSP's Preliminary Objections in the nature of a demurrer and dismiss the Amended Petition.

_____
ELLEN CEISLER, Judge

---

[13] M.T. also alleges that PSP is "imposing registration obligations on [him] in violation of *Commonwealth v. Santana*, 266 A.3d 528 (Pa. 2021)." Am. Pet. ¶ 26. However, this Court has held that "[n]othing in *Santana*, which relates solely to SORNA I, negates the holding of *Lacombe*, which relates to SORNA II." *T.J. v. Pa. State Police*, 288 A.3d 934, 937 (Pa. Cmwlth. 2023); *accord Cao v. Pa. State Police*, 280 A.3d 1107, 1112 (Pa. Cmwlth. 2022).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

M. T.,                                    :
                    Petitioner            :
                                          :
        v.                                :    No. 94 M.D. 2022
                                          :
The Pennsylvania State Police of the      :
Commonwealth of Pennsylvania,             :
                    Respondent            :

# O R D E R

AND NOW, this 11th day of July, 2023, we hereby SUSTAIN the Preliminary Objections filed by the Pennsylvania State Police to M.T.'s Amended Petition for Review and DISMISS the Amended Petition for Review.

_____
ELLEN CEISLER, Judge